880 F.2d 1040
 James F. TAYLOR, Plaintiff-Appellant,
v.
Robert LIST, Attorney General, Patrick B. Walsh, Deputy
Attorney General, Department of Prisons, an administrative
agency for the State of Nevada, Charles L. Wolff, Jr.,
Director, Boyd Marsing, Superintendent, David E. Watson,
Superintendent, Roger Belleville, Lieutenant, Robert
Freeman, Psychiatrist, and Does, John and Jane, 1 through
20, employees and former employees, Defendants-Appellees.
 No. 87-15003.
 United States Court of Appeals,
Ninth Circuit.
 Submitted June 6, 1989*.
Decided July 17, 1989.
 
 James F. Taylor, Carson City, Nev., pro se.
 Brian McKay, Atty. Gen., Criminal Div., John Cary, Deputy Atty. Gen., Criminal Div., Carson City, Nev., for defendants-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before CHOY, ALARCON and LEAVY, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 James F. Taylor ("Taylor"), a Nevada state prisoner, appeals pro se from the district court's entry of summary judgment in favor of the defendants in Taylor's 42 U.S.C.A. Sec. 1983 action. The district court held that Taylor had failed to establish the existence of a material fact with regard to his constitutional claims and that certain defendants were not liable under section 1983 because there was no evidence of their personal participation in any deprivation of constitutional rights which may have occurred.
 
 
 2
 In his affidavits submitted in opposition to the summary judgment motion, Taylor raised genuine issues of material fact regarding actions by defendants Boyd Marsing ("Marsing"), Superintendent at the Nevada State Prison (the "prison"), and David E. Watson ("Watson"), Acting Captain of the prison's Maximum Security Facility, which may have deprived Taylor of his Sixth Amendment right to self-representation. The defendants did not deny or rebut Taylor's factual allegations in their summary judgment motion or in their reply to Taylor's opposition. Thus, we reverse the judgment in favor of defendants Marsing and Watson and remand the case for trial. The judgment in favor of all remaining defendants is affirmed.
 
 FACTS
 
 3
 In 1976, Taylor and two other prisoners were indicted for murder and attempted murder after participating in a riot at the prison. Taylor initially invoked his constitutional right to self-representation. One month prior to trial, Taylor requested that counsel be appointed. His request was denied and Taylor was convicted and sentenced to death. The Nevada Supreme Court overturned the conviction because of the denial of counsel. Ross v. State, 97 Nev. 40, 623 P.2d 980 (1981). Taylor then pled guilty to two counts of murder and received concurrent life sentences without possibility of parole.
 
 
 4
 Taylor filed this 42 U.S.C. Sec. 1983 action on November 10, 1980,[1] alleging that the defendants deprived him of constitutional rights during his criminal trial while he was representing himself. During the trial, Taylor was housed in administrative segregation because of his participation in the riot and thus was not given personal access to the prison law library. He secured a state court order requiring that he be allowed two visits per day from inmate law clerks and be allowed to request up to two books per visit on an exchange basis. In his complaint, he alleged that the defendants prevented him from preparing a defense and presenting evidence and testimony on his behalf by (1) denying him personal access to prison law clerks and use of law books in violation of the state court order; (2) interfering with the prison law clerks' access to witnesses while the law clerks were assisting Taylor in his defense; and (3) intimidating and coercing a witness from giving expert testimony on Taylor's behalf.
 
 
 5
 The defendants moved for summary judgment, arguing that an examination of the numerous motions and documents filed with the state court prior to and after the criminal jury trial proved that Taylor was not denied access to the courts. The defendants contended that Taylor had failed to specify a single instance of actual denial of access to the courts. They also contended that Taylor had stated no facts showing any personal participation in the alleged violations by defendants Robert List ("List"), Patrick B. Walsh ("Walsh"), Charles L. Wolff ("Wolff"), Marsing, and Watson. Thus, they argued, the action should be dismissed as to those defendants.
 
 
 6
 In his opposition to the motion for summary judgment, Taylor alleged that List, the state Attorney General, and Wolff, the Director of the prison, were liable as a result of their knowledge of and failure to prevent the alleged constitutional violations by their subordinates. Taylor also alleged that Walsh, the Deputy Attorney General in charge of prosecuting Taylor, was liable because Walsh told the state court on two occasions that Walsh would talk to the prison officials about the need for compliance with the court's order regarding access to the law clerks and law books. Taylor alleged that Marsing and Watson directly prevented Robert Freeman ("Freeman"), the prison psychiatrist and a named defendant in this action, from testifying on Taylor's behalf after Freeman had agreed to do so. Finally, Taylor alleged that Marsing, Watson, and Roger Belleville ("Belleville") personally stopped law clerks and law books from being presented to Taylor.
 
 
 7
 Taylor attached his own affidavit as an exhibit to his opposition memorandum. The affidavit stated that prior to securing the state court order, he had told Marsing on three separate occasions about his problems with getting legal research material and not being allowed to see law clerks. Taylor refused to lock up in his cell on several dates in an effort to get the problems corrected, but still nothing was done. On January 11, 1978, Taylor notified the state court that he was still being denied access despite the court order. Taylor was denied use of certain research materials which could not be checked out of the library, including the United States Code Annotated, the Nevada Revised Statutes, certain form books, certain manuals on evidence, constitutional rights, and trial procedure, a law dictionary, Federal Practice and Procedure, and the Federal Digest. He stated that prison law clerk Bernard Ybarra ("Ybarra") had notified Taylor in writing that Ybarra, Robert Stickney ("Stickney"), who was also a prison law clerk, and Leon Harley Anderson, another inmate, would testify as to the prison guards' refusal to allow interviews of potential witnesses to the riot and as to Marsing's and Watson's actions in preventing Freeman from testifying. Taylor attached as an exhibit a copy of the letter from Ybarra.
 
 
 8
 Taylor also attached an affidavit from Ybarra. Ybarra stated that Marsing and Watson had told the law clerks they would have access to Taylor and to potential witnesses within the prison. Marsing and Watson did not allow the law clerks to interview or obtain statements from any witnesses, however, even though several prisoners sent messages to the law clerks requesting interviews concerning the defense and offering to testify at trial. Ybarra assisted in research and preparation of motions; Stickney was responsible for visiting Taylor in his cell and keeping Taylor informed of the events at trial. Prior to and during the trial, there were times when Stickney was denied access to Taylor, which prevented Taylor from obtaining important information concerning the developments at trial and giving directions as to his defense. Taylor often was unable to request specific cases from the law library because he did not have access to digests to determine which cases were relevant.
 
 
 9
 Ybarra recalled that Stickney met with Freeman at Ybarra's suggestion to ask if Freeman would testify at trial. According to Stickney's notes of the meeting, which Ybarra said he had read, Freeman told Stickney that Freeman was willing to testify on the ability of purported eye witnesses to observe matters in a crisis situation such as the riot. Freeman would have testified that eyewitnesses who had been in danger themselves during the riot would tend to be unreliable and unable to make the types of observations some of the eyewitnesses claimed to have made. Ybarra stated that he read Stickney's notes from a second meeting Stickney had with Freeman. The notes indicated that Marsing and Watson were present at the meeting and told Stickney they had directed Freeman not to testify at the trial.
 
 
 10
 Subsequently, Taylor filed an additional affidavit from Stickney. Stickney's affidavit stated that prior to and during the trial, Taylor was not permitted to interview witnesses and Stickney was denied access to various inmate witnesses by Marsing and Watson. He was denied access to Taylor on numerous occasions. He spoke to Freeman concerning the possibility that Freeman would testify. During a second meeting with Freeman, Stickney was told by Marsing and Watson that they had directed Freeman not to testify on behalf of Taylor because Freeman was a state employee.[2]
 
 
 11
 In their reply to Taylor's opposition, the defendants addressed Taylor's factual assertions only by saying that Taylor had failed to cite any specific instances of denial of access to the courts. The defendants did not introduce any affidavits or other evidence to refute Taylor's factual assertions; instead, they relied on their legal arguments to support their summary judgment motion.
 
 
 12
 The summary judgment motion was referred to a magistrate who issued a report on January 14, 1987, in which she recommended that the defendants' motion be granted because Taylor had failed to show a genuine issue of material fact in connection with his constitutional claims and had failed to establish personal participation by some of the defendants. The district court issued an order on November 13, 1987, in which it adopted the magistrate's recommendation as to the defendants for whom Taylor had been unable to show personal participation and held that the remaining defendants did not deny Taylor access to the courts.
 
 STANDARD OF REVIEW
 
 13
 We review de novo the grant of summary judgment. Bonner v. Lewis, 857 F.2d 559, 561 (9th Cir.1988). Summary judgment is only appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, the court finds that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Lundy v. Union Carbide Corp., 695 F.2d 394, 396 (9th Cir.1982), cert. denied, 474 U.S. 848, 106 S.Ct. 143, 88 L.Ed.2d 118 (1985). There is no genuine issue of fact if the party opposing the motion "fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).
 
 DISCUSSION
 I. Liability of Individual Defendants
 A. Eleventh Amendment Immunity
 
 14
 The district court entered summary judgment in favor of the Nevada Department of Prisons on the basis of Eleventh Amendment immunity. The Nevada Department of Prisons, as a state agency, clearly was immune from suit under the Eleventh Amendment. Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Thus, the district court's dismissal of the action as to the Department of Prisons was proper.
 
 B. Lack of Personal Participation
 
 15
 The court also entered judgment in favor of List, Wolff, Watson, and Belleville because Taylor had failed to establish a genuine issue of material fact as to the personal involvement of any of these defendants in the alleged violations. Liability under section 1983 arises only upon a showing of personal participation by the defendant. Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir.1979). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983. Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir.1984).
 
 
 16
 List was the Attorney General for the State of Nevada at the time the violations allegedly occurred, but was not directly responsible for the prosecution of criminal charges against Taylor. Taylor made no showing that List directed, participated in, or had knowledge of any alleged misconduct on the part of Walsh, the Deputy Attorney General in charge of prosecuting Taylor. Similarly, Wolff was the Director of the Nevada State Prison and Taylor did not make a sufficient showing of any personal participation, direction, or knowledge on Wolff's part regarding any other prison officials' actions in violation of the state court order. Thus, entry of judgment in favor of List and Wolff was proper.
 
 
 17
 The only allegations Taylor made in his opposition to the summary judgment motion regarding Belleville's participation were that Belleville was the Lieutenant in charge of the maximum security unit in which Taylor was housed and that Belleville personally stopped law clerks and law books from being presented to Taylor. None of the affidavits Taylor attached as exhibits contained any facts to support the allegation that Belleville personally prevented law clerks and law books from reaching Taylor.[3] Also, none of the affidavits contained any facts showing Belleville knew of unconstitutional actions by prison guards under his control and failed to prevent them. A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data. Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir.1981). Thus, entry of summary judgment in favor of Belleville was proper.
 
 
 18
 Entry of summary judgment in favor of Watson on the basis of lack of personal participation was improper. In his opposition to the summary judgment motion, Taylor alleged that Watson personally stopped law clerks and law books from reaching Taylor and that Watson participated in preventing Freeman from testifying on Taylor's behalf. The affidavits from Taylor, Ybarra, and Stickney set forth facts which tended to show personal participation in alleged violations by Watson. These facts establish a genuine issue as to Watson's participation in actions which allegedly deprived Taylor of his constitutional rights. Thus, the district court erred in granting summary judgment in favor of Watson.
 
 
 19
 The district court did not enter summary judgment in favor of Walsh on the basis of lack of personal participation, although the defendants argued that Taylor's allegations as to Walsh's personal participation were deficient. Taylor's allegations against Walsh were wholly insufficient to establish section 1983 liability. Walsh's liability is based solely on his promise to the state court that he would talk to prison officials about the need for compliance with the state court's order regarding access to the inmate law clerks. There is no showing by Taylor that Walsh participated in or directed any alleged actions by the prison officials' which hampered Taylor's defense. Walsh may have known of the overall problem with access to the library and to witnesses through Taylor's communications with the state court, but there was no showing that Walsh knew of specific instances of misconduct by prison officials and failed to act to prevent them. Thus, summary judgment should have been entered in favor of Walsh on the ground that Taylor failed to allege a genuine issue of fact as to Walsh's personal participation in the alleged violations.
 
 
 20
 II. The Merits of Taylor's Claims Against the Remaining Defendants
 
 
 21
 Taylor raised triable issues of fact regarding the personal participation of three defendants--Marsing, Watson, and Freeman--in alleged constitutional violations. To proceed under section 1983 against these defendants, Taylor must allege deprivation of a constitutionally protected right under color of state law. Learned v. City of Bellevue, 860 F.2d 928, 933 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1530, 103 L.Ed.2d 835 (1989). Taylor alleges that the defendants acted in their official capacity to deprive him of his Fifth Amendment due process right to meaningful access to the courts, Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and his Sixth Amendment right to self-representation, Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
 
 
 22
 The magistrate determined that Taylor had failed to establish that any constitutional violation occurred. The magistrate did not address Taylor's claims regarding the defendants' interference with Taylor's and the law clerks' access to witnesses. The magistrate stated that access to the courts was provided to Taylor during his criminal trial because of his absolute right to counsel. According to the magistrate, when Taylor rejected counsel in favor of self-representation, the government was not required to provide Taylor with access to the law library to aid him in his representation because the government had the right to select the means of providing access to the courts and Taylor had rejected the chosen means. The magistrate therefore recommended that the defendants' summary judgment motion be granted.
 
 
 23
 In adopting the magistrate's recommendation, the district court also dealt only with Taylor's complaint that the defendants denied Taylor access to the law library. The court stated that there was clear evidence that Taylor had access to the library through the state court order. In response to Taylor's claim that the prison officials did not abide by the state court order, the district court merely noted that the failure by state officials to follow the rules set down by a state court does not implicate a constitutional interest cognizable under section 1983. Even assuming that a constitutional violation was made out, according to the district court, the plaintiff did not offer any evidence to support his contention.
 
 
 24
 A. Violation of the Sixth Amendment Right to Self-Representation
 
 
 25
 In Faretta, the Supreme Court held that a criminal defendant has the right under the Sixth Amendment to reject court-appointed counsel and conduct his own defense. 422 U.S. at 834-36, 95 S.Ct. at 2540-42. Taylor argues that his right to self-representation was violated when the defendants' denied him access to prison law clerks and witnesses and actively prevented a witness from testifying on his behalf.
 
 
 26
 In Milton v. Morris, 767 F.2d 1443 (9th Cir.1985), we held that the right to self-representation necessarily includes and is premised upon the right of the defendant to prepare a defense. Id. at 1445. Milton involved facts similar to those of the present case. After the defendant in Milton had rejected counsel and decided to represent himself, prison officials hampered his efforts to contact expert witnesses and gave him no access to current law books or witnesses. We noted that prison officials "not only affirmatively failed to provide defense resources, but also materially impeded use of the minimal tools for defense preparation which the trial court tried to ensure." Id. We then ruled that "time to prepare and some access to materials and witnesses are fundamental to a meaningful right of representation. An incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, witnesses, or other tools to prepare a defense." Id. at 1446 (citations omitted). We acknowleged certain factors which would justify limitations on the defendant's access to law books and witnesses, such as security concerns or "avoidance of abuse by opportunistic or vacillating defendants." Id.
 
 
 27
 In recommending denial of Taylor's Sixth Amendment claim, the magistrate relied on our decision in United States v. Wilson, 690 F.2d 1267 (9th Cir.1982), cert. denied, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983). In Wilson, we held that the offer of court-appointed counsel satisfies the government's Fifth Amendment obligation to provide meaningful access to the courts, which was recognized by the Supreme Court in Bounds. Id. at 1272. We also stated that the Supreme Court never suggested in Faretta "that the Sixth Amendment right to self-representation implies further rights to materials, facilities, or investigative or educational resources that might aid self-representation." Id. at 1271.
 
 
 28
 The magistrate's reliance on Wilson was erroneous. In Milton, we stated that we did not need to determine whether the Supreme Court's decision in Bounds would place an affirmative duty upon the state to provide access to a law library for a pre-trial detainee who has rejected counsel and chosen to represent himself[4] because Faretta controls in such a case. 767 F.2d at 1446. We then went on to hold that the Sixth Amendment right to self-representation recognized in Faretta includes a right of access to law books, witnesses, and other tools necessary to prepare a defense. Id. If the evidence offered by Taylor is sufficient to raise a genuine issue of material fact as to whether the defendants prevented Taylor's access to law books and witnesses, entry of summary judgment on Taylor's Sixth Amendment claim was improper.
 
 
 29
 B. Sufficiency of Taylor's Factual Allegations
 
 1. Liability of Defendant Freeman
 
 30
 Taylor named Freeman, the prison psychiatrist who ultimately refused to give expert testimony for Taylor, as a defendant in this action. Taylor failed, however, to assert any basis for holding Freeman liable under section 1983. Taylor did not set forth any facts which showed that Freeman was under an official obligation to give expert testimony on Taylor's behalf. Thus, Freeman was not acting under color of his authority as a prison employee when he made the decision not to testify. We have found no precedent holding that a private individual's refusal to testify as a witness results in a deprivation of the constitutional rights of the individual who requests the testimony. The remedy for such a refusal is a motion to subpoena the witness under Fed.R.Crim.P. 17, not an action under section 1983. Therefore, since Freeman essentially acted as a private individual when he refused to testify, his refusal is not sufficient by itself to expose Freeman to liability under section 1983.
 
 
 31
 Freeman's refusal to testify might expose him to section 1983 liability if Taylor had shown that Freeman conspired with Marsing and Watson to deprive Taylor of his constitutional right to self-representation. A private person may act under color of state law if he "willfully participate[s] in joint action with state officials to deprive others of constitutional rights." United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1540 (9th Cir.1989) (en banc). To be liable, however, the private person must share the common objective of the conspiracy. Id. at 1541. Mere passive acquiescence in the direction of state officials generally is not sufficient. Fonda v. Gray, 707 F.2d 435, 438 (9th Cir.1983).
 
 
 32
 Here, Taylor has failed to set forth any facts which tend to show that Freeman conspired with Marsing and Watson to deprive Taylor of access to the witnesses and legal materials needed to prepare Taylor's defense. The facts show that Freeman merely obeyed Marsing and Watson's direction that he not testify. Thus, Taylor's allegations with regard to Freeman are insufficient to establish liability under section 1983 and the entry of summary judgment in favor of Freeman was proper.
 
 
 33
 2. Liability of Defendants Marsing and Watson
 
 
 34
 Taylor's factual allegations are sufficient to raise a genuine issue of material fact with regard to a possible violation of his right to self-representation by defendants Marsing and Watson. The prison officials' denial of personal access to the law library and to witnesses may have been justified by security concerns. At the time the alleged constitutional violations occurred, Taylor was being confined in maximum security and was segregated from the general prison population because of his alleged participation in the prison riot and murder.
 
 
 35
 Taylor's affidavits, however, assert that Marsing and Watson also prevented the law clerks who were assisting Taylor pursuant to the state court order from having any access to witnesses. Taylor was denied access to the law clerks on numerous occasions. He thus was not able to obtain the law books he needed to prepare his defense and was not able to communicate with the law clerks about developments at trial. When the law clerks secured Freeman as an expert witness for the defense, Marsing and Watson allegedly prevented Freeman from testifying. In light of our decision in Milton, these facts create a genuine issue as to whether Marsing's and Watson's actions so completely hindered Taylor's ability to prepare a defense that his right to self-representation was denied.
 
 
 36
 The defendants did not establish the absence of a genuine issue of material fact since they did not refute any of Taylor's specific factual allegations. They did not introduce any evidence showing that security concerns justified the specific denials of the law clerks' access to witnesses or Taylor's access to the law clerks. The defendants stated generally that the numerous papers Taylor filed with the court during his state trial showed he must have had adequate access to law books. An examination of these papers, which were attached as an exhibit to the defendants' motion for summary judgment, reveals that the papers were almost completely devoid of case citations except for cites to a few Nevada cases and certain landmark Supreme Court cases. These papers, contrary to the defendants' assertion, do not clearly demonstrate that Taylor had sufficient access to the law library and to witnesses to prepare his defense. Thus, the entry of summary judgment in favor of defendants Marsing and Watson was improper because Taylor raised genuine issues of material fact as to a possible Sixth Amendment violation and the defendants failed to establish the absence of a genuine issue.
 
 
 37
 We note that the harm resulting from the asserted deprivation of Taylor's right to meaningful self-representation has been substantially remedied through the Nevada Supreme Court's reversal of Taylor's conviction. Thus, if Taylor can prove at trial that Marsing and Watson did violate his Sixth Amendment right, damages for the violation may be nominal unless Taylor also can prove some other harm resulted from the constitutional deprivation.
 
 CONCLUSION
 
 38
 The district court correctly entered summary judgment in favor of the Nevada Department of Prisons, List, Wolff, and Belleville on the basis of immunity and lack of personal participation. Summary judgment properly was entered in favor of Walsh since Taylor failed to raise a genuine issue as to Walsh's personal participation in the alleged constitutional violation. Summary judgment in favor of Freeman was proper because Taylor failed to assert a basis for holding Freeman liable under section 1983. Thus, we affirm the judgment with respect to those defendants.
 
 
 39
 Entry of summary judgment in favor of Watson on the basis of lack of personal participation was improper since Taylor raised a triable issue as to Watson's participation in the alleged constitutional violation. In Milton, we recognized that a pre-trial detainee's right of self-representation must include a right of access to witnesses and law books so that the accused can prepare a defense. Taylor offered evidence in the form of affidavits which is sufficient to raise a genuine issue of material fact as to a possible violation of his right to represent himself. The defendants Marsing and Watson failed to counter this evidence and thus did not establish the absence of a genuine issue. Therefore, the district court's entry of summary judgment in favor of Marsing and Watson on Taylor's Sixth Amendment claim was improper. We reverse the judgment with respect to defendants Marsing and Watson and remand the case for trial.
 
 
 40
 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 The delay in prosecution of this action was caused by issuance of a stay pending completion of the criminal proceedings against Taylor
 
 
 [2]
 The defendants contend that the evidence contained in the Ybarra and Stickney affidavits is nothing more than "hearsay upon hearsay." Ybarra's and Stickney's assertions that they were denied access to any witnesses and denied access to Taylor on numerous occasions are not hearsay. Both Ybarra and Stickney assert that Freeman was going to testify, a factual allegation which does not constitute hearsay. Ybarra lacked personal knowledge of Marsing's and Watson's actions in directing Freeman not to testify because Ybarra's assertions were based on a reading of Stickney's notes. Stickney's affidavit, however, contained the same evidence and Stickney had personal knowledge since he was present at the meeting when Marsing and Watson allegedly said Freeman was not going to testify
 Stickney's statement that he was informed by Marsing and Watson that they had directed Freeman not to testify does contain a hearsay element. The statement could not be offered to establish that Marsing and Watson had in fact directed Freeman not to testify because the statement would then be offered for the truth of the matter asserted. The statement could be offered, however, for the nonhearsay purpose of showing that Marsing and Watson were the individuals who told Stickney that Freeman was not going to testify. That evidence is probative on the issue of whether Freeman was directed not to testify and tends to create a genuine issue of material fact when combined with the fact that Freeman previously had indicated willingness to testify and that Marsing and Watson were present at the second meeting with Stickney.
 
 
 [3]
 One of the affidavits submitted by Taylor contained a statement to the effect that the affiant was informed and believed that Belleville was involved in depriving Taylor of access to law clerks and law books. The statement does not raise a triable issue regarding Belleville's involvement. To raise such an issue, the statement would have to be made on personal knowledge, not information and belief. Fed.R.Civ.P. 56(e)
 
 
 [4]
 In Milton, we noted that Wilson did not conclusively resolve this issue because the defendant in Wilson had ultimately accepted representation by counsel at trial. We also noted that this issue remains unsettled in the other circuits. 767 F.2d at 1446 n. 2