24 F.3d 245
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Steven E. DULL, Plaintiff-Appellant,
v.
Eddie YLST, et al., Defendants-Appellees.
 No. 93-16441.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 5, 1994.*
Decided April 14, 1994.
 
 Before: POOLE, BEEZER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Steven E. Dull, a California state prisoner, appeals pro se the district court's order granting defendants' motion for summary judgment in his 42 U.S.C. Sec. 1983 action. Dull contends that defendants Eddie Ylst, warden of California Medical Facility (CMF); Dr. John Dann, a dental surgeon and employee of CMF; Dr. Bryant Toth, a reconstructive surgeon at the Pacific Presbyterian Medical Center; and the Pacific Presbyterian Medical Center violated his Constitutional rights when he suffered facial disfigurement and serious side effects after undergoing corrective surgery to alleviate complications from mouth cancer treatment. Specifically, Dull claims that defendants (a) failed to inform him of the possible results and complications of the surgery, and that had he been so advised, he never would have consented to the surgery, and (b) failed to correct the side effects from surgery with a follow-up operation. Dull also contends that the court appointed a biased medical expert who rendered a flawed opinion to the court. We have jurisdiction under 28 U.S.C. 1291, and affirm.
 
 
 3
 We review de novo the district court's grant of summary judgment. Hopkins v. Andaya, 958 F.2d 881, 884 (9th Cir.1992). Appointments of neutral experts pursuant to Fed.R.Evid. 706 are reviewable only for abuse of discretion. Students of Cal. School for the Blind v. Honig, 736 F.2d 538, 549 (9th Cir.1984), vacated on other grounds, 471 U.S. 148 (1985). A district court's decision to admit expert testimony pursuant to Fed.R.Evid. 702 is also reviewed for abuse of discretion. United States v. Kinsey, 843 F.2d 383, 388 (9th Cir.1988) cert. denied, 487 U.S. 1223 (1988).
 
 
 4
 A grant of summary judgment should be affirmed only if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Taylor v. List, 880 F.2d 1040, 1044 (9th Cir.1989). To defeat a summary judgment motion, the nonmoving party must come forward with evidence sufficient to establish the existence of any elements that are essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Taylor, 880 F.2d at 1045. The party opposing summary judgment cannot rest on conclusory allegations but must set forth specific facts showing that there is a genuine issue for trial. Leer v. Murphy, 844 F.2d 628, 631 (9th Cir.1988).
 
 
 5
 To establish liability under Sec. 1983, the plaintiff must demonstrate that defendants, acting under color of state law, deprived him of a right guaranteed under the Constitution or a federal statute. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.1988).
 
 1. Deliberate medical indifference
 
 6
 The appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited deliberate indifference to serious medical needs. Hudson v. McMillian, 112 S.Ct. 995, 998 (1992); Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Deliberate indifference may be manifested in two ways; either when prison officials deny, delay or intentionally interfere with medical treatment, or by the way that prison physicians provide medical care. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992). In either case, however, the indifference to medical needs must be substantial; inadequate treatment due to negligence, inadvertence, medical malpractice or differences in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1981); Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980).
 
 
 7
 However, there are situations where the medical treatment received by a prisoner is so bad that the treatment itself manifests a deliberate indifference. Estelle, 429 U.S. at 105 n. 10; see also Ortiz v. City of Imperial, 884 F.2d 1312 (9th Cir.1989) (medical professional's disregard of evidence of medical complications, and prescription of contraindicated medicines without examination constitute deliberate indifference); Wood v. Housewright, 900 F.2d 1332 (9th Cir.1990) (medical staff's premature removal of a prisoner's sling without consulting prisoner's records which caused a break of surgically implanted pin constitutes deliberate indifference).
 
 
 8
 Here, in 1986, Dull suffered from recurrent oral cutaneous fistulas[1] in an area where he had received previous mouth cancer surgery. Dr. Dann, an oral maxillofacial surgeon, examined Dull in April 1987 and recommended the removal of a fixation wire placed in his mouth during previous reconstructive surgery, and closure of the fistulas. Dr. Dann states in his medical report dated April 15, 1987 that he discussed with Dull the potential hazards of the surgery as well as the risks involved if the fistulas remained untreated.[2]
 
 
 9
 In October 1987, Dr. Toth, a reconstructive surgeon at the Pacific Presbyterian Medical Center examined Dull and found that he was still experiencing drainage from recurrent fistulas and diagnosed him with "osteoradiconecrosis of the mandible."[3] Toth recommended surgery to reconstruct the lower part of his jaw using abdominal muscle and skin grafts after removing unhealthy bone. Dr. Toth agreed with Dr. Dann that the primary surgical goal was to reintroduce healthy tissue into the area and improve the blood supply to the mandible. Dull was informed that his alternative would involve mandibulectomy (removal of the lower jaw bone entirely), tracheostomy and a feeding tube (in his stomach) if the mandible could not be salvaged. Both Drs. Toth and Dann concurred that if Dull did not have this surgery, the bloodflow would become greatly impaired, the mandible would require consistent draining, and portions of the nonliving bone would decay. According to Toth's operative report, the entire surgical procedure was explained to Dull at length and Dull consented to the surgery.
 
 
 10
 On February 4, 1988, Dull signed an authorization and consent to the recommended surgery, acknowledging that he had been informed of the operation, its nature and risks, and available alternative methods of treatment. The following day, Drs. Toth and Dann performed the recommended surgery.[4]
 
 
 11
 On June 10, Dr. Dann and Dr. Toth performed follow-up surgery on Dull.[5] Dr. Toth states in his operative report that Dull was informed of the follow-up surgery procedure and all the possible risks and complications.
 
 
 12
 After the Dann/Toth treatments, Dull complained that his tongue was still immobile, his face was disfigured, and he was experiencing speaking, swallowing, and drooling difficulties, as well as pain and socialization problems. Drs. Dann and Toth believed that nothing in the way of further significant surgical action was warranted. In May 1992, Dull underwent further operations to alleviate some of the immobility caused as a residual from his prior surgeries. The tongue loosening was partially successful.
 
 
 13
 Dr. Seth Thaller, who was appointed by the court, reviewed the entire medical record and concluded that all the appropriate surgical and medical needs were achieved, following the requisite standard of care, and that defendants did not engage in "deliberate medical indifference" to Dull's treatment.
 
 
 14
 With regard to Dull's claim that he did not provide an informed consent to the surgery, he failed to present any evidence that an alleged failure to inform of the precise side effects that he suffered would prove that the defendants were deliberately indifferent to his medical needs. Moreover, Dull failed to produce any evidence to refute the defendants' showing that he authorized the surgical procedures and was fully informed of their inherent risks and potential complications. Thus, Dull's claim that the defendants violated his Constitutional rights by allegedly failing to provide him with information to make an informed consent is deficient. See Estelle, 429 U.S. at 103-04; Broughton, 622 F.2d at 460.
 
 
 15
 With regard to Dull's claim that the defendants failed to conduct follow-up surgery to correct the surgery's side effects, affidavits by Drs. Toth and Dann, and the court-appointed expert stated that the surgical goals were achieved and that follow-up surgery was not warranted, given the extremely difficult nature of his case. Thus, although Dull expressed dissatisfaction with the results of the surgery, Dull failed to produce any evidence to establish a genuine issue as to whether defendants violated his Constitutional rights in treating his medical problems. See Estelle, 429 U.S. at 103-04; Sanchez, 891 F.2d at 242; Hoptowit, 682 F.2d at 1253.
 
 2. Court-appointed expert
 
 16
 Federal Rule of Evidence 706 allows the district court to appoint a neutral expert on its own motion, whether or not the expert is agreed upon by the parties. Students of Cal. School for the Blind v. Honig, 736 F.2d at 549. Under Fed.R.Evid. 702, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if his specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. United States v. Amaral 488 F.2d 1148, 1153 (9th Cir.1973). The decision whether to admit expert testimony does not rest upon the existence or strength of the expert's opinion but rather whether the expert testimony will assist the trier of fact in drawing its own conclusion as to a fact in issue. United States v. Rahm, 993 F.2d 1405, 1412 (9th Cir.1993).
 
 
 17
 First, Dull challenges the court's appointment of Dr. Thaller, claiming that a conflict of interest existed because Thaller is affiliated with the U.C. Medical Center, which is sometimes under contract with defendant CMF. Second, Dull challenges the report Thaller submitted to the court because Thaller failed to: (a) perform a physical examination; (b) review Dull's entire medical history; and (c) address the defendants' decision not to perform follow-up surgery. Dull, however, fails to produce any specific evidence to show that Thaller was biased or lacked the necessary knowledge, skill, experience, training or education to assist the court in its understanding of the medical issues involved. See Fed.R.Evid. 702, 706; Rahm, 993 F.2d at 1412; Students of Cal. School for the Blind, 736 F.2d at 549; Amaral 488 F.2d at 1153. Thus, the district court did not abuse its discretion in appointing Thaller or accepting his report into the record. See Kinsey, 843 F.2d at 388; Students of Cal. School for the Blind, 736 F.2d at 549.
 
 
 18
 Therefore, the district court did not err by granting summary judgment for the defendants in Dull's Sec. 1983 action. See Fed.R.Civ.P. 56(c); Taylor, 880 F.2d at 1044.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, plaintiff's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 An abnormal opening located on the cutaneous surface in the oral cavity. Thomas Lathrop Stedman, Stedman's Medical Dictionary (5th ed. 1982)
 
 
 [2]
 "Both Dr. Capozzi and I feel that the patient would benefit from removal of fixation wire and local surgery for attempted closure of an oral cutaneous fistula. We realize that this procedure has lpotential [sic] hazard including breakdown and eventual sluff and loss of the entire mandible. The only other alternative would be for immediate pectorali-flap, deltopectoral flap coverage of the mandible. Dr. Capozzi feels that the attempted local surgery is most appropriate at this time and I concur ... I have discussed the above with this patient in some detail. He realizes that if left enclosed ... the fistula would present a source of further contamination to his already diseased mandible thereby increasing the likelihood of potential loss of the mandible from angle to angle. He realized that the surgery itself may precipitate major complications in this clinical setting. He appears to understand the above and has given his consent."
 
 
 [3]
 According to Dr. Dann, this is a situation wherein bone, which has been irradiated with a compromised blood supply, dies and is ultimately exposed, protruding through the tissues of the mouth into the oral cavity
 
 
 [4]
 The surgery included (1) surgical exploration of the mandible with degloving of the mandible and resection of the osteoradianecrotic bone; (2) mobilization and repair of osteocutanious fistulas; (3) exploration and harvesting of the right rectus abdominous muscle flap; (4) microsurgical transfer and reconstruction of the mandible with the free rectus abdominous muscle flap and anastomisis of the lingual artery to the inferior epigastric artery and the facial vein to the interior epigastric vein; and (5) a split-thickness skin graft, right thigh, to the muscle flap
 
 
 [5]
 Drs. Dann and Toth debulked the transferred muscle, advanced the upper face over the previously transferred muscle, and made a full thickness skin graft from the thigh to the floor of the mouth