26 F.3d 130
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John Byron CUFFLE, Plaintiff-Appellant,
v.
Thomas AGNOS, Sheriff; Frank Waelde, Jail Commander;
Arthur Huffman, Dr.; L. Lynn, R.N., Defendants-Appellees.
 No. 93-16499.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 24, 1994.*
Decided June 7, 1994.
 
 Before: HUG, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Arizona state prisoner John Byron Cuffle appeals pro se the district court's grant of summary judgment in favor of the defendants. Cuffle alleged, in his 42 U.S.C. Sec. 1983 action, that the defendants violated his civil rights by subjecting him to "unwarranted and unwanted" medical examinations and strip searches while he was incarcerated in the county jail. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 "A grant of summary judgment is reviewed de novo to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there exist any genuine issue of material fact and whether the district court correctly applied the relevant substantive law." Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 (9th Cir.1990).
 
 
 4
 "[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979); accord Michenfelder v. Sumner, 860 F.2d 328, 331 (9th Cir.1988). Nonetheless, "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives--including deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); accord Michenfelder, 860 F.2d at 331. In Turner v. Safley, 482 U.S. 78 (1987), the Supreme Court set forth the standard for reviewing alleged infringements on prisoners' constitutional rights. The Court identified four factors that should be considered when determining whether the policy in question is " 'reasonably related' to legitimate penological objectives, or whether it is an 'exaggerated response' to those concerns." Turner, 482 U.S. at 87; accord Michenfelder, 860 F.2d at 332-36 (applying Turner analysis to Fourth Amendment privacy claim). Thus, in determining the reasonableness of a policy which impinges prisoners' constitutional rights, a court must consider (1) whether the policy is reasonably related to legitimate penological interests, (2) whether prisoners can exercise the constitutional right in other ways, (3) the feasibility of accommodating the constitutional right in light of prison resources and the effect such accommodation might have on inmates and guards, and (4) the absence of other means to achieve the policy's goal without impinging on prisoners' constitutional rights. Turner, 482 U.S. at 89-90.
 
 
 5
 In evaluating the reasonableness of a policy that impinges on a prisoner's Fourth Amendment right to privacy, this court considers "the scope of the particular intrusion, the manner in which it is conducted, the justification of initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559; accord Michenfelder, 860 F.2d at 332. In applying the Turner test we must accord great deference to prison officials' assessments of their interests. Turner, 482 U.S. at 85; Michenfelder, 860 F.2d at 331. Moreover, the prisoner bears the burden of showing that prison officials intentionally used exaggerated or excessive means to enforce security. Bell, 441 U.S. at 561-62; Michenfelder, 860 F.2d at 333.
 
 Medical Examinations
 
 6
 Cuffle contends that the he was subjected to unwanted medical tests and a physical examination, in violation of his right to privacy. This contention lacks merit.
 
 
 7
 Cuffle was admitted to the Madison Street Jail on 14 September 1990, where he was classified as a maximum security prisoner. On 28 September, 30 September, and 2 October 1990, Cuffle was escorted to the Correctional Health Services for a physical examination. A nurse documented Cuffle's medical history, took his vital signs, and screened Cuffle for communicable diseases. The screening for communicable diseases consisted of a serology for syphilis, a tuberculin skin test, and a dip stick urinalysis. Defendants, in their motion for summary judgment, proffered evidence which established that the epidemiological screening and physical examination were conducted to prevent the spread of communicable diseases. The policy in question requires a physical examination on all inmates within fourteen days of admission into the facility. Cuffle did not submit controverting evidence.
 
 
 8
 We conclude that the prison's routine epidemiological screening and physical examination is reasonably related to a legitimate penological objective. The medical examination was narrow in scope and conducted in conformance with medical practices. See Bell, 441 U.S. at 559; Michenfelder, 860 F.2d at 332. The desire to prevent the spread of communicable diseases within the prison is a legitimate justification of the policy. See Bell, 441 U.S. at 559; Michenfelder, 860 F.2d at 333. Finally, the medical examination was conducted in the prison medical facility. See Bell, 441 U.S. at 559; Michenfelder, 860 F.2d at 333. Moreover, Cuffle has failed to demonstrate that the medical examinations are an intentional use of exaggerated or excessive means to prevent the spread of disease. See Bell, 441 U.S. at 561-62; Michenfelder, 860 F.2d at 333. Furthermore, Cuffle has failed to come forward with evidence that establishes that the policy requiring medical examinations implicates the other factors set forth in Turner. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (establishing that to defeat a motion for summary judgment, the nonmoving party must come forward with evidence sufficient to establish the elements of the claim); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) (same).
 
 
 9
 Accordingly, the district court properly granted summary judgment for the defendants on this claim. See Nishimoto, 903 F.2d 712.
 
 Strip Search
 
 10
 Cuffle contends that he was subjected to strip searches in violation of his right to privacy. Cuffle argues that the strip searches were unreasonable because he was handcuffed the entire time he was out of his cell and because he was never left unattended. This contention lacks merit.
 
 
 11
 Cuffle was handcuffed and escorted to the prison medical facility. Cuffle remained handcuffed during the medical examinations. When Cuffle returned to his cell the defendants conducted a visual strip search of his body. In their motion for summary judgment, the defendants proffered a jail policy which requires all maximum security inmates to be handcuffed when escorted out of their housing unit. Defendants argue that the strip search is needed to maintain institutional security.
 
 
 12
 In Michenfelder, we upheld the constitutionality of a more intrusive strip search. We concluded that prison officials had a legitimate penological objective in performing strip searches, including visual body cavity searches, when a prisoner leaves or returns to the unit, even while under escort and in chains at all times. Michenfelder, 860 F.2d at 332-33. In Michenfelder, the searches were conducted on prisoners returning from sick call. Id. at 332. We conclude that the visual strip searches in question in this case fall directly within our holding in Michenfelder. Because the strip searches are narrow in scope, conducted in an appropriate manner, conducted in the prisoner's cell, and justified by the need to maintain institutional security, we conclude that the strip searches are reasonably related to legitimate penological interests. See Bell, 441 U.S. at 559; Michenfelder, 860 F.2d at 332-33. Moreover, Cuffle has failed to demonstrate that the strip searches are an intentional use of exaggerated or excessive means to enforce security. See Bell, 441 U.S. at 561-62; Michenfelder, 860 F.2d at 333. Furthermore, Cuffle has failed to come forward with evidence that establishes that the policy requiring the particular strip searches implicates the other factors set forth in Turner. See Celotex, 477 U.S. at 322; Taylor, 880 F.2d 1045.
 
 
 13
 Accordingly, the district court properly granted summary judgment for the defendants on this claim. See Nishimoto, 903 F.2d 712.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3