**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

BLANCHARD BUCK CANNON,

    Defendant-Appellant.

No. 03-8037

(D.C. No. 03-CR-006-D)
(D.Wyo.)

**ORDER AND JUDGMENT** *

Before **BRISCOE, LUCERO,** and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is

therefore ordered submitted without oral argument.

Defendant Blanchard Buck Cannon appeals his convictions for possessing a

firearm after having been convicted of a felony in violation of 18 U.S.C. §§

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

922(g)(1), 924(a)(2), and 924(e)(1), and for possessing a firearm with an obliterated serial number in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). Cannon represented himself at trial. His sole issue on appeal is whether he was denied his Sixth Amendment right of self-representation during his pretrial proceedings despite his alleged early and unequivocal demands to represent himself. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

The government argues Cannon did not clearly or unequivocally assert his right to self-representation until shortly before his scheduled trial was to begin, and that the district court allowed him to proceed *pro se* following a Faretta[1] hearing. Additionally, the government asserts that criminal defendants do not have a constitutional right to self-representation at the pretrial stage of criminal proceedings, and that even if such a right existed, the district court's denial of the defendant's alleged request was harmless error. We agree with the government's first assertion and, therefore, need not reach the remaining questions.

In determining whether a district court erred in failing to allow a defendant

---

[1] The term Faretta hearing refers to Faretta v. California, 422 U.S. 806 (1975), in which the Supreme Court acknowledged the Sixth Amendment right to self-representation. Addressing the purpose and scope of such hearings, we have held that, "[t]o ensure that [a] defendant's waiver of counsel is knowing and intelligent, [a] trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding *pro se*." United States v. Mackovich, 209 F.3d 1227, 1236 (10th Cir. 2000).

to proceed *pro se*, we review the district court's findings of fact for clear error, but review *de novo* the ultimate question of whether Sixth Amendment constitutional violation occurred. United States v. Mackovich, 209 F.3d 1227, 1236 (10th Cir. 2000). In order for a defendant to invoke his right of self-representation, the defendant must clearly and unequivocally assert his intention to represent himself. Id. This requirement serves the dual purposes of "protect[ing] against an inadvertent waiver of the right to counsel by a defendant's occasional musings on the benefits of self-representation" and "also prevent[ing] a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation." Id. We have determined that "[i]n ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a constitutional primacy to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." Id. at 1237.

Cannon insists he clearly, repeatedly, and unequivocally asserted his right to self-representation from the earliest stages of the proceedings. Our review of the record leads us to a contrary conclusion. During Cannon's initial appearance, the magistrate judge informed Cannon of his right to a court appointed attorney if he was unable to afford one on his own and asked if he had "filled out a financial

3

affidavit to determine . . . eligibility for appointment of counsel." ROA, Vol. V, at 4.[2] The magistrate judge further informed Cannon: "[I]n order for this court to determine and, if appropriate, assign counsel to you, I will need to have you fill out an affidavit to show me what kind of assets you would have and if you were able to retain your own attorney. So we will provide you with a financial affidavit form. You'll need to fill that out; and assuming you're eligible, I will appoint counsel for you to represent you through all future proceedings in this case." Id. at 5. Following Cannon's completion of the affidavit during his initial appearance, the court determined he was eligible for the appointment of counsel and appointed counsel. Id. at 8; ROA, Vol. I, Docs. 5, 6; ROA, Vol. V, at 9. In determining whether Cannon clearly asserted his right to self-representation, our focus is upon what the magistrate judge would have understood, not unspoken reasons Cannon may have had for submitting the financial affidavit – such as his merely responding to the judge's directions. Cannon's conduct at his initial

---

   [2] Both parties refer to the initial hearing transcript as Volume Four of the record on appeal. However, upon examining the record, we have determined that the first two pages on Volumes Four and Five are reversed. The first two pages of each of these Volumes, which detail the volume number and describe the proceedings transcribed, do not correspond with the underlying documents. In particular, we note that Volume Five, although labeled transcript of detention hearing held 2/7/03, is actually the transcript of Cannon's initial appearance held 2/5/03. Similarly, Volume Four, although labeled transcript of first appearance held 2/5/03, is actually the transcript of Cannon's detention hearing held 2/7/03. For purposes of this order, we will refer to the documents according the volume number as they appear in the record.

4

appearance would have lead the magistrate judge to believe that Cannon was seeking an attorney, not rejecting one.

Cannon argues that "by the time of the detention hearing two days [after his initial appearance], the magistrate judge was aware of Cannon's desire to waive counsel." Aplt. Supp. Br. at 17. At Cannon's detention hearing, where he was represented by counsel, the court was aware that Cannon was uncertain about whether he wanted to be represented by an attorney, but was not aware that he had definitively decided to represent himself.[3] The court stated the following:

> I understand there's some question in your mind whether or not you wish to have counsel represent you. Let me tell you, sir. I would strongly, strongly urge that you utilize the assistance of Mr. Koehmstedt in this matter or - - this is not something that is easily defended on a pro se basis. I think you need to have the able assistance of Mr. Koehmstadt to represent your interests in this matter. . . . I want to encourage you to cooperate with your defense counsel. I've assigned him to you, and you've got a very able assistant, and he needs you to cooperate with him, and I'm not saying you haven't, but you haven't had an opportunity to work with him yet.

ROA, Vol. IV, at 6. Cannon contends the court should have allowed him an opportunity to further "articulate his desires" and should have used the opportunity "to question [him] regarding his wishes to waive counsel." Aplt. Supp. Br. at 18. However, our review of the record does not indicate that Cannon

---

[3] The record on appeal fails to indicate the source of the court's awareness of Cannon's uncertainty as to whether he wanted to be represented by counsel.

5

sought or was denied the opportunity to address whether his counsel would continue to represent him, or whether Cannon would represent himself.

Cannon suggests that his desire to represent himself was implied by his *pro se* filings at his arraignment on February 14, 2003. The record does not bear out Cannon's assertion. At his arraignment, Cannon permitted his counsel to speak on his behalf. Despite being questioned by the district court about a variety of matters including his educational background and his understanding of the indictment, Cannon never indicated that he wanted to represent himself. Instead, in response to a question from the court, Cannon said that he and his attorney had discussed his indictment. ROA, Vol. IV, at 5. While it is true that Cannon submitted two handwritten motions (a motion for change of venue and a praecipe for filing the motion), the court did not view these submissions as a request to proceed *pro se*. Rather, the court inquired of defense counsel whether he had any objection to the motions being filed, and when defense counsel said he did not, the court permitted their filing. At no time during his arraignment did Cannon express either opposition to his representation by counsel or request self-representation.

Cannon argues that his February 18, 2003 letter submitted to the district court clearly asserted his intention to represent himself. In the letter, Cannon writes:

6

> Despite The appalling fact That i have been disposed of my legal Organic Materials . I find This paper more Than ample to communicate.
>
> I respectfully decline to bear witness against myself; And i further refrain from rendering "legal saction" via of my signature; to any public Defender. Thereby stiffling any reasonable reasonable avenues for post conviction relief.
>
> It has been my hard earned Experience to accept the fact That should one authorize "Assembly Line" conviction via of his signature: Than That person remains a victim of his own ignorance.

Aplt. Supp. Br., Attachment 2. Cannon's letter is not a clear assertion of his intention to represent himself, but rather is a remarkably unclear piece of writing.

In support of his contention that he clearly invoked his right to self-representation, Cannon also notes he endeavored to personally file three more *pro se* motions. Two of these motions were motions for subpoenas, ROA, Vol. I, Docs. 23, 32, and one of the motions was a discovery request. Id., Doc. 19. None of the motions indicated Cannon's intention to reject representation by counsel, or to assert his right to represent himself.

Cannon argues that his "most unequivocal expression yet of his desire to represent himself" was received by the district court on March 25, 2003. We agree. In this motion titled "Notice of Action to Defend Pro Se," he asserts that "he will defend himself on or about the 1st day of April 2003. In the U.S. 7th Distric Court 1101 S. Wolcott Casper, Wyoming 82601. See: Taylor v. List 880 F 2d 1040. (9th cir 1989). Right to self representation . . ." ROA, Vol. I, Doc. 33. This motion is the first assertion that can be described as a clear indication that

7

Cannon wanted to invoke his right to self-representation.

The district court, sensing that Cannon wanted to represent himself because of his continued filing of *pro se* pleadings, discussed the issue with counsel prior to the court's receipt of Cannon's "Notice." On March 24, 2003, during a telephone status conference with Cannon's second attorney,[4] the district court indicated it was in receipt of "some materials that [the court] ordered filed with the clerk of the court because [Cannon] appears to be wanting to file pleadings and represent himself pro se, and frankly they're goobledygook." ROA, Vol. VII, at 3. In response, Cannon's second attorney noted "[h]e may want to represent himself from what I gather." Id. The district court noted its concern with Cannon's readily apparent lack of legal knowledge and skill. Id. at 3-4. Cannon's attorney was directed by the court to "[r]ead this stuff and tell me what he wants." Id. at 4.

Cannon's attorney on April 2, 2003 filed a motion requesting that Cannon be permitted to represent himself and requesting a hearing on the matter. On April 4, 2003, the district court held a telephonic hearing. During this hearing, the court informed Cannon that he could not "frustrate the process of the court by deciding at the very last minute, less than two weeks before trial . . . that you're

---

[4] Cannon's first attorney withdrew from the case because Cannon would not cooperate with him.

8

going to represent yourself." ROA, Vol. VIII, at 4. Cannon asserted that he had been trying to represent himself "from the git-go, ever since [he] was arrested." Id. at 4. The court inquired of Cannon's attorney whether he had read the materials filed by Cannon. Cannon's attorney responded that he had read the materials, but noted that he had not understood all of them. Id. at 6. The district court then stated: "Well, that's my problem. I've just finished them. I don't understand what they mean." Id. During the course of this hearing, the court set April 14, 2003, as the date for the Faretta hearing. At that hearing, the district court ruled that Cannon had waived his right to counsel and had asserted his right to represent himself.

As regards Cannon's contention that he was prejudiced by the district court's failure to permit his self-representation between the date of his "Notice" and the grant of his request, this alleged prejudice is not borne out by the record. The district court inquired of Cannon whether he would need more time to prepare to properly represent himself. The following exchange occurred between Cannon and the court:

> THE COURT: Mr. Cannon, are you prepared to go to trial tomorrow morning? That's when this trial is set.
> THE DEFENDANT: As far as I can be, yes.
> THE COURT: Well, that doesn't answer my question. Do you need more time to represent yourself?
> THE DEFENDANT: No.
> THE COURT: Do you need more time to prepare to represent yourself?
> THE DEFENDANT: No.

9

ROA, Vol. IX, at 43.

In summary, the first document that can be described as remotely approaching a clear indication of an assertion of a right to self-representation is Cannon's *pro se* "Notice" filed on March 25, 2003. Perhaps Cannon did desire to represent himself early on, but he failed to make a clear and unequivocal assertion of this intent prior to March 25. Once Cannon made his intention clear, the district court acted promptly to address the issue and ultimately permitted Cannon to represent himself at trial. As for the time period between Cannon's "Notice" and the district court permitting him to proceed *pro se*, the court inquired of Cannon whether he would need more time to prepare to represent himself and was informed by the defendant that no additional time was necessary.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge