**ROWE, Trustee v AETNA CASUALTY & SURETY CO.**

Ohio Appeals, 2nd Dist., Franklin Co.

No. 3380. Decided Oct. 14, 1941.

McGee, Rowe & Evans, Columbus, for plaintiff-appellant.

Druggan & Gingher, Columbus, for defendant-appellee.

OPINION

By HORNBECK, J.

This is an appeal from a judgment upon a directed verdict in behalf of the defendant.

The action was for a money judgment against the defendant as surety upon the bond of Rachel Phillips, trustee of Abel Phillips, a predecessor trustee to the plaintiff.

The following errors are assigned:

(1) In the action of the trial court in directing a verdict for the defendant at the close of all the evidence.

(2) In admitting certain documents of the Probate Court of Franklin County, Ohio, proffered by defendant.

(3) In admitting oral testimony contradicting the records of the Probate Court of Franklin County, Ohio.

Rachel Phillips was named trustee under certain items of the will of Zephaniah Williams, deceased. Preliminary to her appointment she executed a bond as principal with the defendant, The Aetna Casualty & Surety Company. as surety in the sum of $10,000, conditioned, among other things, that she would faithfully account for all money and funds that came into her hands as such trustee. This bond was dated November 14, 1921. On January 31, 1939, the final account of Rachel Phillips, trustee, was approved by the Probate Court of Franklin County, which disclosed a shortage in funds of said account in the sum of $5800.00, for which sum the Probate Court entered judgment against said trustee and thereafter authorized the present trustee to file claim with the defendant, as surety, for said sum of $5800.00 and, if refused, to institute action to recover said amount. As a result of the refusal of the defendant to pay, this action was instituted.

On November 15, 1927, the trustee made application to the Probate Court for release of defendant from her bond as trustee and for permission to "have personal sureties approved by this Court, to cover her liability for remaining assets in her possession". She recited in the application that it would

be to the best interest of the trust estate to grant her application and stated that she had on hand assets of the trust of the par value of $9,900.00, which sum was the full amount with which she had been charged as trustee. The prayer of this application was consented to by the defendant and on the same day the Court approved the application and an entry to that effect, the pertinent part of which is as follows:

"and that it is to the best interest of said trust estate to have said The Aetna Casualty Company released from the said bond of the said trustee, and personal sureties to be approved by this court substituted on said bond, it is hereby ordered and decreed that said The Aetna Casualty Company be released from said bond of said Rachel Phillips, and that the said Rachel Phillips give new bond as trustee of said estate, said new bond and sureties to be approved by this court."

This entry was duly approved on the 15th of November, 1927, by Homer Z. Bostwick, Probate Judge.

The effect of this entry upon the liability of the defendant is made the subject of consideration and discussion in the briefs of the parties and before we proceed to the other questions in the case we give some attention to it.

At the outset it is essential to determine whether or not there is any proof in this record that the default of the trustee, as determined by the Probate Court in January, 1939, occurred prior to November 15, 1927, the date of the entry heretofore quoted in part, releasing defendant company from the bond of the trustee. On August 18, 1927, the Probate Judge approved, confirmed and settled the second account of the trustee and found that she had a balance of $9,900.00 in her hands, defendant's Exhibit B. On March 18, 1930, the Probate Judge approved, confirmed and settled the trustee's third account and found that the trustee had a balance of $9,900.00 cash in her hands, defendant's Exhibit B. No exceptions were filed to either of these accounts and they stand without modification or reversal and are final. See §10506-40 GC, and former §§10834-5, 11032-3 GC.

The trial judge, upon the information of the latter account, was required to hold that subsequent to the order of November 15, 1927, releasing defendant as surety on the bond of the trustee, she had in her hands, as such trustee, the full amount of the assets of the trust for which she was accountable and, therefore, there had been no default at the time of the aforesaid order, releasing the defendant as surety on the bond.

If the terms of the formal order of the court can be given force and effect this entry accomplished the release of the Casualty Company, as surety, as of the date of the entry. The language will not permit of the construction that the release was subject to, or predicated upon, the giving of a new bond by trustee. Having, then, determined the meaning of the order, we next consider the authority and power of the Probate Judge to make such an order. In so doing, we are not considering the propriety nor the practice respecting such an order. If the court with power or jurisdiction ordered the surety released, then that order may be tested only by proceedings in review for that purpose. Otherwise, the order has the effect of a judgment and may not be attacked collaterally.

The Probate Court is given its general jurisdiction by the Constitution of Ohio, §8, Art. IV, which in the very first part thereof provides:

"The Probate Court shall have jurisdiction in probate and testamentary matters," etc.

The requirements for the appointment of a trustee named by will that a bond be given by the trustee, fixing the amount thereof, determining the qualification of the sureties, providing for other or new bond, are all probate and

testamentary matters as to which "jurisdiction is conferred directly and expressly by the Constitution". Judge Wanamaker, in **Fidelity & Deposit Co. v Wolfe, 100 Oh St 334.** The 6th syllabus in the foregoing case holds:

"An order of the Probate Court releasing and discharging the sureties on a former bond after a new bond has been given and approved, is a valid order that can not be challenged by any subsequent proceeding upon the former bond made in the Court of Common Pleas."

It will be noted that as a part of this pronouncement there is the conclusion that the release and discharge of the old bond came only after the giving and approval of a new bond. However, this syllabus properly was confined to the facts in the case under consideration but the pronouncement would be as sound if the fact as to the giving and approval of the new bond was not in the record. This conclusion must result by reason of the general jurisdiction of the Probate Court in probate and testamentary matters and because there is no statutory provision precluding full force and effect being given the order.

We have examined §§10861-1 and 10862 GC, the effect of which is to require the executor or administrator, upon application for release of sureties, to file an account, file a new bond, which bond must be approved by the court, before the release of the sureties on the old bond. These sections, however, are limited in terms to the conduct of executors or administrators in relation to their bonds. These sections do not mention any other fiduciaries nor are we cited to, nor do we find, upon our own examination, any sections which would require that bonds of fiduciaries other than executors or administrators are within contemplation of the sections under consideration.

Under the new Probate Code, §10506-27 GC, the provisions of §10861-1 GC have been changed so that the section has application to fiduciaries, which by the terms of §10506-1 GC clearly include testamentary trustees as well as executors, administrators and guardians. This latter section is new in Ohio. As we interpret the statutory provisions effective and controlling at the time that the Probate Judge made the order specifically releasing the defendant as surety on the bond of the trustee there was no statutory provision that required the trustee to give a new bond and have it approved by the Probate Judge before the surety could be released, and that the right to release the former surety on a bond was within the general jurisdiction of the Probate Court.

We are cited to **Howenstein, Admr. v Sweet. et, 13 O. C. C. 239,** which is authority only to the effect that §6204 R. S., the language of which was substantially as §10861-1 GC makes an order releasing a surety on an executor's or administrator's bond from liability thereon ineffectual until a sufficient new bond is given. The question before the Court related only to an order of the Probate Court discharging the surety on an executor's bond. We have examined all the other cases on the subject cited by appellant and several more on our own initiative but find none wherein the sections under consideration have been given application as to bonds of testamentary trustees.

The sections of the Code controlling the Probate Judge in the appointment of the testamentary trustee, the acceptance of bond and the giving of a new bond were set forth in §§10591 to 10596 GC., inclusive. **Sec. 11029 GC,** controlled the accounting of trustees, and §11030-1 GC, provided that the Probate Court shall issue and have served in the manner provided by law, in the case of settlement by executors and administrators, the necessary citation and notices by publication or otherwise, requiring all persons interested, to attend such settlement and make objections thereto, if any they have. This is the only section we find, effective at the time of the order of the Probate Court, releas-

ing defendant as surety on the trustee's bond, which relates the statutes controlling the proceedings of executors and administrators in the conduct of their estates to the conduct of a testamentary trustee in administering the estate of which he is the fiduciary.

It is obvious from a consideration of all of the recordings of the transactions and orders of November 15, 1927, that the Probate Judge purposed to have no interim between the release of the surety on the first bond and the giving and approval of the new bond because all matters intended to bring about the continuity of the bonds were completed and journalized as of the same date.

On the same day, namely, November 15, 1927, that the entry, defendant's Exhibit F, heretofore quoted, releasing the defendant surety company and requiring the trustee to give a new bond and sureties to be approved by the court was filed, the following entry, defendant's Exhibit G, was recorded in the journal of the Probate Court:

"This day came Rachel Phillips and gave a new bond in said case in the sum of $10,000.00, which amount is satisfactory to the court at this time. Bond given New Bonds Number 1, page 498."

The journal for November 15, 1927, defendant's Exhibit K, the date when the orders, defendant's Exhibit F and defendant's Exhibit G, were made and in which they were both carried, bore the signature of Homer Z. Bostwick, Probate Judge, which signature was in fac simile by rubber stamp. The entry, defendant's Exhibit G, was neither endorsed by counsel nor the Probate Judge. Defendant's Exhibit L is taken from page 498 of New Bond Book No. 1 for administrators, executors, guardians, assignees and trustees of the Probate Court of Franklin County, Ohio, and obviously is the bond book to which reference is made in the journal at the end of defendant's Exhibit G which was entered in said bond book and is a bond executed by Rachel Phillips, as principal and three other individuals as sureties, assuring due performance and discharge of all of her duties as trustee. At the bottom of this Exhibit L there is this notation, "This bond approved this 15th day of November, 1927", a line for signature under which is found "Judge of the Probate Court", but there is no signature thereon.

These exhibits, defendant's Exhibits G, K and L, bring us to the next question for consideration on the appeal. The trial judge was of opinion that defendant's Exhibit G, reciting that the trustee gave a new bond in the sum of $10,000.00 carried on to the journal, was sufficient to establish the approval of the new bond in all essentials and that its acceptance and approval in conjunction with the former order of the court releasing the surety, accomplished its release and, as the evidence did not disclose that there had been any shortage established to have occurred prior to the release of the defendant, as surety, the plaintiff must fail and so instructed the jury. We have reached the same conclusion and, if we are in error in our holding that the release of the surety was complete, independent of the giving of the second bond, we are satisfied that upon the succeeding court order, defendant's Exhibit G carried into the court's journal, defendant's Exhibit K, the release of the former surety was complete.

The language of this entry, defendant's Exhibit G, is incomplete and unsatisfactory but in the light of the factual developments in the record, it is within its terms, appropriate and just that it be construed to be an approval of the new bond of Rachel Phillips, as trustee. It recites that Rachel Phillips gave a new bond in the case. That it was new is obvious. If it was not complete in form and with good and sufficient surety it could not be designated as a bond.

But it is urged that there is no proper authentication of the entry in that it is not approved by the court and the journal in which it is carried bears only the fac simile signature of the

Probate Judge. This contention in our judgment is not sound for two reasons. First, because it is doubtful if it is essential that the Probate Judge sign the journal into which the orders, decrees and judgments are carried, and second, if it is necessary that it be signed, it must be assumed, that the fac simile signature which appears upon the journal for the day upon which the relevant entries were spread upon the record was authorized to be placed there by the Probate Judge and must be recognized to all intents and purposes as though it had been his original signature.

In an annotation to Fairbanks v Baird et al (Mass.) 30 A. L. R. 698, at 703 the weight of authority is announced as determined from decisions in 12 states and England, as follows:

"The courts seem to be generally in accord in holding that a printed or stamped signature of the Judge or court officer issuing an order or writ is a sufficient authentication, fulfilling the requirement of a signature, where such signature has, in effect, been adopted by the issuing officer."

The journal is a book which the Probate Court is required to keep and its contents are set forth in the statute. It is essential to the authenticity of the minutes of the official business transacted in that court or orders made by the Probate Judge in civil actions or proceedings that they be signed by the Probate Judge, or, that the journal for any given day or period of time be authenticated by the signature of the Judge?

We quote from §10501-15 GC, former §§1594, 1595-1 GC, which designates the books which the Probate Judge shall keep.

"5. A journal, in which shall be kept minutes of official business transacted in the Probate Court, or by the Probate Judge, in civil actions and proceedings.

11. A record of bonds, in which shall be recorded bonds of executors, administrators, guardians, trustees and assignees which have been taken and approved by him." (Probate Judge).

It will be noted that there is no provision in the quoted paragraph, No. 5, for the signature of the Probate Judge to authenticate the journal. Nor is there any such provision respecting any of the other 12 books which the Probate Judge is required to keep by the section.

Sec. 10501-22 GC, former §§10499, 1212 GC., provides that,

"In the exercise of jurisdiction the Probate Judge shall have ▓▓▓▓ the powers, perform the duties, and be governed by the rules and regulations provided by law for the Courts of Common Pleas and the Judges thereof in vacation, so far as they are consistent with laws in force. The provisions of law governing civil proceedings in the Court of Common Pleas, so far as applicable, shall govern like proceedings in the Probate Court where there is no provision on the subject in this act."

There is no provision on the subject, namely, the obligation of the Probate Judge to sign the journal, in the act. So that we are remanded to a consideration of the obligation of a Common Pleas Judge to sign the journal of that court. Sec. 11604 GC, governs procedure in Common Pleas Court and is as follows:

"All judgments and orders must be entered on the journal of the court, and specify clearly the relief granted or order made in the action. The entry must be written into the journal as soon as the entry is filed with the Clerk or directed by the court and shall be journalized as of the date of the filing of said entry or of the written direction by the Court."

There is nothing in the quoted section which would make it incumbent upon the Probate Judge to sign the

journal at the end of each day's recording.

In **King v King, 38 Oh St 372,** it was held that,

"It is not essential to the validity of an order for temporary alimony that the Judge sign it where it has been entered upon the journal by direction of the Judge."

And it is there said that,

"The provisions as to signing the journal (in the Common Pleas Court) which the former practice act contained was not carried into the code."

The Code provision to which reference was made was commented upon and cited in **State v Hamilton County, 7 Ohio 305,** which at that time, probably 1835, the practice act (29 Stat. 75), provided:

"that for preventing errors in entering the judgments, orders and decrees of each court, the judges thereof, before every adjournment, shall cause the minutes of their proceedings to be publicly read by their clerk, and corrected when necessary, and the same shall be signed by the presiding judge, then sitting in court; which minutes, so signed, shall be entered in a book and carefully preserved among the records; and no proceedings, orders, judgments or decrees of either of the said courts, shall be in force or valid until the same be so recorded and signed."

The law on the subject generally is considered in an annotation to Fairbanks v Baird et, (Mass.) 30 A.L.R. 698, 715, and the principle is announced as follows:

"The courts in general hold that the absence of the signature of the judge from a judgment or decree, or from the minutes, in no way affects the validity of the judgment or decree, even though such signature may be required by statute, as the statutes in that respect are generally regarded as directory only."

Decisions from eight states are cited supporting the pronouncement which do not include Ohio. But **Simmons v Brown, 4 O. Dec. Re. 29,** in line with the rule, as stated in the aforesaid annotation, holds that,

"The requirements of law as to making up and signing the records of the Common Pleas are only directory and the proceedings are valid without such making up and signing."

The state of Kentucky only is cited in opposition to the general rule.

Whether or not the Probate Judge shall, as a matter of administrative procedure, authenticate the books or the entries carried therein by his signature is, of course, a matter for the determination of such Judge.

Some further support for the claim that the Probate Judge approved the second bond of the trustee is found in the provision of ¶11 of §10501-15 GC, as effective of the date of the orders under consideration, providing for a bond recorded, "in which shall be recorded bonds of executors, administrators, guardians, trustees and assignees **which have been taken and approved by him".** (Emphasis ours). It is in contemplation of this statutory provision that only such bonds as have been taken and approved by the Probate Judge will be carried into the record of bonds and a fortiori, it may be said, that if a bond is found in this record it has been approved by the Probate Judge.

We find no error in the direction of the verdict for defendant.

The next error assigned, No. 2, is not very definitely considered in the brief but as we interpret it, it is directed to the admission in evidence on behalf of the defendant, of its Exhibits A. & C., which were accounts filed by Rachel Phillips, trustee, in that capacity. These accounts, as we have

heretofore stated, were probative upon the very material question whether the default had occurred prior to the order releasing the defendant as surety on the bond and providing for the giving of the new bond and subsequent orders in relation thereto.

The third error assigned is directed to the action of the Trial Judge in permitting Matt E. Roberts, who was administrative clerk in the office of the Probate Judge at the time the transactions under consideration in this case occurred, to testify that he had, by the authority and under the direction of the Probate Judge, qualified the personal sureties on the bond tendered by the trustee. This action on the part of the administrative clerk is made the subject of much consideration in the brief. It is urged that the Probate Judge may not delegate the power to another to qualify sureties because such act demands judicial cognizance, especially in fixing the residence of the sureties and in determining their financial qualifications to act as sureties.

The admission of this testimony, though not helpful on the ultimate question for consideration, namely, whether or not the Probate Judge approved the bond, is helpful as a chain in the circumstances disclosing the purpose of the various orders made by the Probate Judge subsequent to the filing by the trustee of the application for the release of the old sureties and the taking of a new bond. That a deputy clerk could be delegated by statute to qualify sureties can not be doubted. The Clerk of Courts, and his deputy are so authorized and regularly act in pursuance thereof. §1584 GC, in 1927, provided that:

"Each deputy (Probate) clerk may administer oaths in all cases when necessary, in the discharge of his duties."

We are of opinion that a Probate Judge may authorize his deputy to do that which appears was done by the administrative clerk in the instant matter, subject always, of course, to the necessity that the approval of the bond, per the order, become the act of the Probate Judge. The judicial act is the approval of the bond. The processes and means by which the Judge derives the information upon which he finally acts is not material. What the administrative clerk did is of no consequence and it is immaterial whether his testimony was admitted or refused because it was not his act which constituted a determination of the sufficiency of the sureties and of the bond, but the act of the Judge as pronounced in the entry and carried upon the journal and into the bond book.

This conclusion is strengthened by a consideration of §10218 GC which provides,

"A court or an officer, authorized by law to approve a surety, may require such person to testify, orally or in writing, touching his sufficiency; but this shall not, in itself, exonerate the officer in an action for taking insufficient surety."

If the authority of the administrative clerk to require the sureties on the second bond of the trustee to testify touching their sufficiency is in doubt, the action of the Judge can not be avoided and he may not be exonerated under the aforesaid statute by reason of the fact that his deputy may have made the inquiry as to the qualifications of the sureties.

Upon a fair consideration of all the record and of the briefs and of all questions urged, we are satisfied that no error occurred to the prejudice of plaintiff in the action of the trial judge in directing a verdict for the defendant.

The judgment will be affirmed.

GEIGER, PJ. and BARNES, J., concur.