**Fred B. CUDA; Richard S. Cuda; FBC Salmon Company, an Oregon corporation; FBC Salmon Farms, Inc., an Oregon corporation; and Rogue Seafood Company—Oregon, an Oregon Corporation, Plaintiffs,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation, Defendant.**

Civ. No. 93–6230–TC.

United States District Court, D. Oregon.

April 4, 1995.

---

**3.** Newspaper articles are self-authenticating under FRE 902(6).

Gary M. Georgeff, Robert J. McGaughey, McGaughey & Georgeff, Portland, OR, for plaintiffs.

Jan D. Sokol, H. Lee Cook, Stewart Sokol & Gray, Portland, OR, for defendant.

## ORDER

COFFIN, United States Magistrate Judge:

This is a civil action on a conservator's bond with jurisdiction based on diversity. As discussed in further detail below, Plaintiffs' entered into a business transaction with the Souther Conservatorship. Plaintiffs have sued other participants in the transaction in a companion case that has been dismissed.[1] The other action alleged fraud, legal malpractice, breach of contract and violations of federal and state securities law. In this action, Plaintiffs are suing Safeco as the issuer of the conservator bond that bound Safeco as surety for the conservator of the Souther Conservatorship. Plaintiffs allege that the conservator breached her duties and that she and her agents wrongfully harmed Plaintiffs.

Presently before this Court is defendant's motion to dismiss[2] and for sanctions. For the reasons stated below, the former motion is allowed, the latter is denied and this action is dismissed.

## GENERAL BACKGROUND

### The Plaintiffs and the Transaction

Plaintiffs FBC Salmon Company (FBC), FBC Salmon Farms, Inc. (FBC Farms), and Rogue River Seafood Company (Rogue) are Oregon corporations. Oregon–Pacific Salmon Ranch, Inc. (OPSR) was an Oregon corporation, all of whose stock was acquired by FBC. FBC owned 100% of the OPSR stock when OPSR was dissolved on December 20,

1991. Plaintiff Fred Cuda is the president of FBC, FBC Farms, and Rogue. Plaintiff Richard Cuda is Fred Cuda's father. Fred and Richard Cuda together own the majority of shares of stock of FBC, FBC Farms, and Rogue.

Thomas Souther was a ward of the Thomas S. Souther conservatorship estate (Souther Conservatorship). Bette Souther was the conservator of the Souther Conservatorship.[3] The assets of the Souther Conservatorship were distributed when the conservatorship estate was terminated.

Prior to February 1989, Stephen Hill, Buck Coe, and the Souther Conservatorship owned 100% of the stock of OPSR. Prior to February 1989, Hill, Coe, McAllister, and Wagner owned 100% of Rogue, a fish processing plant in Gold Beach, Oregon. Prior to February 1989, OPSR and Rogue were integrated businesses under the joint management and control of Hill and Coe. Rogue was formed to, and did, process all of the output of OPSR.

Beginning about August 1988, Coe and Plaintiff Fred Cuda discussed the possibility of Fred Cuda investing in OPSR. Between that date and the final purchase, Fred Cuda had numerous telephone conversations and meetings with Hill and Coe regarding plaintiffs' acquisition of OPSR.

In February 1989, plaintiffs purchased all the stock of OPSR and substantially all the assets of Rogue. The Souther Conservatorship sold certain OPSR assets to plaintiffs.

The various transactions alleged in the complaint which give rise to plaintiff's claim against defendant's bond all pre-date termination of the conservatorship. A complaint in the companion case *Cuda v. Hill* filed January 28, 1991 prior to the termination of the conservatorship alleges:

During the period August, 1988 through February, 1989 Bette Souther was the conservator for the Souther Conservatorship

---

1. This Court dismissed the other action after considering dispositive motions. *Cuda v. Hill et al.,* Civ. No. 93–6230–TC.

2. Because the motion is based in part upon affidavits and materials outside the pleadings, I treat

it as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b) and 56.

3. Margaret Paulbach is the personal representative of the estate of Bette Souther who has died.

... and as such, controlled the Souther Conservatorship. During the period of August 8, 1988 through February, 1989, Hill and/or Co. were agents of Bette Souther and the Souther Conservatorship in their negotiations with, and representations to the plaintiffs, and as such, were controlled by Bette Souther and the Souther Conservatorship. On information and belief, Bette Souther knew of Mr. Cuda's discussions with Hill and/or Co. and knew that Mr. Cuda was considering investing in and expanding OPSR based on those discussions.

Civil No. 91–6036–TC, Fifth Amended Complaint. In that cause of action, the transactions alleged to have given rise to plaintiffs' complaint are identical to the transactions which are alleged to give rise to the present claims for relief against defendant Safeco in this case. As such, plaintiffs were aware of the existence of claims arising from transactions taking place during the pendency of the Souther Conservatorship, and prior to its termination.

### The Defendant and the Bond

On or about August 21, 1987, Safeco posted a conservator's bond on behalf of Bette Souther, in her capacity as conservator for the Souther Conservatorship. The conservator bond was posted in the sum of $820,000.00 and payable unto the State of Oregon as obligee in conformance with an Order of the Multnomah County Circuit Court of August 12, 1987 and Or.Rev.Stat. Chapter 126. (A copy of the conservator's bond is attached to the Affidavit of H. Lee Cook at Exhibit "A", attached to # 7).

The disability of the protected person terminated August 6, 1991, upon his attaining age of majority. Thereafter, on October 4, 1991, A Fourth and Final Accounting of the Petition for Termination of the Conservatorship and Order of Distribution were filed with the Multnomah County Circuit Court. (A copy of the Accounting Order and Petition are attached to the Affidavit of H. Lee Cook at Exhibit "C", attached to # 7).

The Order Approving the Fourth and Final Accounting and Petition for Termination of Conservatorship and Order of Distribution were entered October 28, 1991. (A copy of the Order is attached at Exhibit "D" to the Affidavit of H. Lee Cook attached to # 7). A Notice of Time for Filing Objections to the Fourth and Final Accounting; Petition for Termination of Conservatorship and Order of Distribution was mailed to certain persons on October 4, 1991. (The Notice Of Affidavit of Mailing are attached to the Affidavit of H. Lee Cook at Exhibit "E", attached to # 7).

Plaintiffs in this case filed neither a request for notice, as provided for by ORS 126.193[4], nor an objection to the Fourth and Final Accounting and Petition for Termination of Conservatorship and Order of Distribution.

### STANDARDS

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she

---

4. ORS 126.187 requires the conservator to provide notice of a petition to terminate a conservatorship and a copy of each accounting to interested persons who have "filed a request for notice".

has the burden of proof. *Id.* at 323, 106 S.Ct. at 2553. There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Taylor v. List*, 880 F.2d 1040 (9th Cir.1989).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

### DISCUSSION

A fundamental defect in plaintiffs' case is that they failed to comply with Oregon law by neglecting to present a claim to the conservatorship prior to the date on which the probate court ordered the conservatorship assets to be distributed to Souther and when the conservator was discharged and the bond exonerated.[5] *See* ORS 126.353(1):

A conservator shall pay from the estate claims against the estate and against the protected person arising before or after the conservatorship upon their presentation, allowance and maturity.

ORS 126.357(1):

An action upon a claim shall not be brought until the claim is disallowed or 60 days have elapsed from the date of its presentment without allowance and payment.

As no claim was presented, plaintiffs are barred from bringing the present action.

*See generally, e.g., Balthrop v. Berryman*, 96 Or.App. 354, 772 P.2d 955. (1989).

Plaintiffs make several arguments in attempting to avoid this effect.

### Not Merely Procedural Statutes

Plaintiffs first argue that the above statutes are to be characterized as procedural statutes only and as such should not be applied to bar their respective claims. However, this is not a case involving a slight difference in state and federal law as to the procedural requirements for service. See *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Substantive notice requirements were not met and under the unique circumstances of this case, the result is a suit lacking in legal basis. The plaintiffs' belated attempt to recover from defendant damages they may have suffered from the actions of others is the product of their own procedural failings and miscues.

For background purposes, it should be noted that in *Cuda v. Hill* plaintiffs filed six complaints. In their first five complaints, plaintiffs sued Bette Souther in her capacity as conservator, but failed to present a claim to the conservatorship prior to the termination of the conservatorship and distribution of its assets by the probate court. Bette Souther died on July 3, 1992, and Margaret Paulbach was appointed as personal representative for the Estate of Bette Souther. While plaintiffs presented a claim to the Estate of Bette Souther, it was based upon allegations in their second amended complaint which continued to name Bette in her capacity as conservator. As I noted in the order in *Cuda v. Hill* granting Margaret Paulbach's motion for summary judgment, plaintiffs simply failed to sue Bette Souther in her individual capacity until their fifth amended complaint which was filed on May 7, 1993. By then, the statute of limitations had expired on their claims against Bette individually.

Similarly, plaintiffs here did not make an inconsequential and technical procedural error when they failed to present their claim to

---

5. ORS 126.243 provides that "the bond of a conservator continues in effect until the final account is approved and an order of discharge is entered ..." The final account was approved, Exhibit "D" to #7 and an order of discharge was entered, Exhibit "A" to #14.

the Souther Conservatorship as required by Oregon law. Plaintiffs deprived defendant of several safeguards and protections. To the extent Bette Souther was personally at fault in the OPSR transactions (in which she acted as conservator), she would have been individually liable to the conservatorship. *See* ORS 126.383(2). Had plaintiffs presented their claim properly, and had the probate court agreed that the claim was valid, the conservatorship could have had recourse against Bette Souther and possibly eliminated the need for victims of Bette Souther's wrongdoing to attempt to turn to the conservatorship bond for redress. However, this scenario was precluded after the conservatorship was terminated without objection. In addition, had defendant been notified that a very substantial claim was lingering against the bond it posted on behalf of the conservator, it could have sought a preliminary injunction against the distribution of any wrongfully obtained conservatorship assets pending litigation of any claims against Bette Souther in her individual capacity and/or as a conservator. Moreover, plaintiffs' delay in filing notice with the conservatorship (and defendant) has diminished if not eliminated defendant's opportunity to pursue Bette Souther's estate for indemnification if such action were necessary.

*Standing Present*

Plaintiff's contention that defendant lacks standing to raise issues about plaintiffs' compliance with ORS 126.353 and that the conservatorship somehow waived the objection to plaintiffs failure to present a claim are meritless. As discussed above, defendant was injured by plaintiffs' failure to present a claim, and furthermore, was discharged and had its bond exonerated by termination of the conservatorship. When Thomas Souther reached the age of majority, his disability terminated and so did his conservatorship. It was plaintiffs' own failures which led to their claim not being addressed and decided in the context of the conservatorship matter. Now plaintiffs have sued Safeco for $820,000.

Their argument that Safeco cannot raise defenses to their cause of action arising out of the termination of the conservatorship lacks merit.

*Plaintiffs did not Comply with State Statutes*

Plaintiffs' argument that they complied with the state statutes which address notice of claims to a conservator also lacks merit. Plaintiffs contend that they complied with ORS 126.353(2)(a) [6] by providing notice of the claim to the conservator. However, a review of the letter addressing the "claim" sent by plaintiff's then counsel reveals that it does not constitute a claim, but is at best an appraisal of the possibility of a future claim. *See* Exhibit 4 to # 11. The only statement regarding an amount of the claim, as is required by the statute, is the following sentence: "Thus, reasonably foreseeable damages sustained may approach or exceed $2 million." P. 3 of Exhibit 4 to # 11. When that sentence is combined with the following paragraph relating to the potential resolution of the issues, it becomes clear that only in the future, if at all, would an actual or written statement of a claim be submitted. No claim or written statement of a claim was ever submitted to the conservatorship.

*Effect of Exoneration of the Bond*

Plaintiffs next put forth an unpersuasive argument that any order exonerating the bond would have only avoided defendant's liability for subsequent wrongful acts of the conservator and that defendant remains liable for the unlawful acts of the conservator occurring while the bond was in effect. The statutory provisions which plaintiffs contend are consistent with plaintiffs' interpretation, ORS 33.510 and 33.530, govern discharge on application of the surety. That is, during the pendency of a conservatorship for instance, the surety may, upon notice to the principle, apply to the court to be relieved from liability for the acts or omissions of the principal occurring after the date of the order reliev-

---

**6.** ORS 126.353(2)(a) provides in pertinent part: (2) A claim may be presented by either of the following methods: (a) The claimant may deliver or mail to the conservator or the attorney for the conservator a written statement of the claim stating its basis, the name and address of the claimant and of the claimant's attorney if the claimant is represented by an attorney in respect to the claim and the amount claimed; ....

ing the surety. Thus, there is generally no discharge of the conservator and there is no termination of the conservatorship. That situation is entirely distinct from the present one. Here, the conservator was discharged, the conservatorship was terminated, and in conformance with ORS 126.243, the surety's obligation under the terms of the bond was completely and entirely void.

Similarly, the one case relied upon by plaintiffs, *Rowe v. Aetna Casualty & Surety Co.*, 69 Ohio App. 291, 42 N.E.2d 706 (1941), merely allocates liability between one surety and its successor in a pending trust. The trustee was not discharged and the case does not apply.

Plaintiff's hypothetical of a conservator skipping town with conservatorship funds just prior to a bond's exoneration is not persuasive. As was the case in the present action, bonds are generally not exonerated without the filing of a receipt of the property distribution to the formerly protected individual. In addition, there are no allegations in this action of such a type of fraudulent wrongdoing that would justify extending the surety's liability past the time of the bond's exoneration. Moreover, plaintiffs' purported claims are not latent ones and there is a procedure in place that plaintiffs could have utilized to have claims settled prior to the bond's exoneration.

*Circumstances of this Case Present No Constitutional Violation*

■ Plaintiffs' argument that the Oregon statutory requirements are unconstitutional in . that they did not receive notice of the winding up of the conservatorship is unconvincing under the circumstances herein.[7] The court notes that plaintiffs filed suit against Bette Souther in her capacity as "Conservator to the Estate of Thomas Souther" in *Cuda v. Hill* approximately 13 months before the termination of the conservatorship. They knew full well that Tom Souther was a minor. The conservatorship files, which were available to them as public rec-

ords, reflect that Tom Souther was born on August 6, 1973. Simple mathematical calculations would have revealed the date on which Tom Souther turned 18 (and therefore the date on which the conservatorship was subject to termination). Furthermore, it is not any lack of notice to plaintiffs of the termination of the conservatorship that is the cause of their failure to present their claim to the conservatorship, but rather their apparent unawareness of the Oregon statutory requirements regarding the presentment of claims against an estate or protected person.

The authority cited by plaintiffs for their constitutional argument is distinguishable, for here, unlike the caselaw cited, plaintiffs knew full well that they were dealing with a conservatorship established on behalf of a minor, had at least constructive knowledge of when the conservatorship would end, and should have been aware of the statutory requirements for proceeding against a conservatorship.

In *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), the Court reaffirmed the principle that "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause" and further held that the significant state action attendant upon probate proceedings required that actual notice of the proceedings be provided to known or reasonably ascertainable creditors. The Court found notice by publication to be insufficient with respect to such creditors, and observed:

> In assessing the propriety of actual notice in this context consideration should be given to the practicalities of the situation and the effect that requiring actual notice may have on important state interests. [Citations omitted]. As the Court noted in *Mullane*,[8] "(c)hance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper" ... Creditors, who have a strong interest in maintaining the

---

7. "[W]hether a particular method of notice is reasonable depends on the particular circumstances." *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 483, 108 S.Ct. 1340, 1343–44, 99 L.Ed.2d 565 (1988).

8. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

integrity of their relationship with their debtors, are particularly unlikely to benefit from publication notice. *As a class, creditors may not be aware of a debtor's death or of the institution of probate proceedings.* Moreover, the executor or executrix will often be, as is the case here, a party with a beneficial interest in the estate. This could diminish an executor's or executrix's inclination to call attention to the potential expiration of a creditor's claim. There is thus a substantial practical need for actual notice in this setting.

485 U.S. at 489, 108 S.Ct. at 1347 (emphasis added).

Interestingly, on a point which I find to be more analogous to the instant case, the *Tulsa* court also reaffirmed that the state action implicated in self-executing statutes of limitations does not implicate the Due Process Clause—i.e., due process does not require that potential plaintiffs be given notice of the impending expiration of a period of limitations. 485 U.S. at 485–86, 108 S.Ct. at 1345. *See also Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982).

It does not follow that plaintiffs were deprived of due process by the lack of actual notice of the termination date of the Souther Conservatorship where they were able to file a lawsuit against Bette Souther as conservator before the termination of the Conservatorship and either chose not to comply with or were simply unaware of the statutory requirement that they first file a claim in the conservatorship proceeding. If plaintiffs would have complied with the requirements, they would have received notice of the conservatorship's activities, and thus, the statutory framework as applied in this case is not suspect. Plaintiffs' real complaint, it seems, is not that they failed to receive notice of when the conservatorship terminated,[9] but that the conservator failed to draw their attention to the requirement that they present their claims to the conservatorship as a

predicate to any lawsuit. This argument, it seems, is quite parallel to the contention, rejected by the Supreme Court, that due process requires a defendant who becomes aware of a potential claim to provide actual notice to the claimant of the applicable statute of limitations as a prerequisite to raising the expiration of the limitations period as a defense.

The fact is that plaintiffs had approximately 13 months to present their claims against the Souther Conservatorship before it terminated and simply failed to do so.[10] During this time plaintiffs were fully aware of the existence of the conservatorship for a minor and the relationship of the state court to the conservatorship, and should be charged with knowledge of the pertinent statutory requirements for proceeding against the Souther Conservatorship. No due process violation can be charged to the conservatorship or defendant for plaintiffs' own procedural deficiencies in failing to properly present their claims.

Furthermore, an affidavit in *Cuda v. Hill* of Charles Ruttan, an attorney for the conservatorship, states that, on the occasion of Tom Souther's 18th birthday, he informed plaintiffs' then counsel of record that the conservatorship would be terminated as a matter of law when Souther reached the age of 18. Notwithstanding this actual notice, no claim was presented in the conservatorship proceedings.

In addition, plaintiffs' complaint that the conservatorship assets were distributed without notice to them is even more puzzling, given this chronology, in light of the option they had under Fed.R.Civ.P. 65 to seek a preliminary injunction against distribution of the conservatorship assets pending the litigation of the lawsuit against Bette Souther as conservator. Plaintiffs should not be allowed to pursue defendant after the winding up of the conservatorship to make up for their double failure to properly present their claim

---

**9.** In fact, defendant in *Cuda v. Hill* submitted an affidavit in that case which indicates that plaintiffs' counsel was orally informed that the conservatorship would terminate on the occasion of his 18th birthday.

**10.** The conservatorship began on August 12, 1987 and terminated on February 18, 1992. Plaintiffs filed their original complaint in *Cuda v. Hill* on January 23, 1991. The Petition to Terminate Conservatorship was filed on October 4, 1991.

against the conservatorship in the first instance or to request an order from the court maintaining the status quo until the merits of the lawsuits were determined.

*State Statute Requiring Notice Before Discharge of a Surety is Not Applicable in this Case*

■ ORS 33.520 provides in pertinent part:

**Discharge of surety or letter of credit issuer on application of principal.**

Any ... guardian ... administrator or other fiduciary shall be entitled to have any surety on the bond of the fiduciary ... discharged from liability thereon, and the fiduciary may file a new bond ... as provided in this section. The fiduciary may, on written notice to the surety or letter of credit issuer and all other interested persons, apply to the court that accepted the bond ... praying that the surety or irrevocable letter of credit be discharged from liability thereon, and that the principal be allowed to file a new bond or irrevocable letter of credit and to account. Notice of the application shall be served on the surety or letter of credit issuer and on each of the persons interested, within the state, not less than 10 days prior to the date on which the application is to be made unless it satisfactorily appears to the court or judge that the notice cannot with due diligence be served within the state, in which case notice may be given in such manner as the court or judge shall direct. Upon the return of the application, the principal may file a new bond or irrevocable letter of credit satisfactory to the court or judge, and therewith file an account of all proceedings, whereupon the court or judge shall proceed, upon due notice to all persons interested, to judicially settle the account and duly credit and charge the principal; and upon the trust fund or estate being found or made good or paid over or properly secured, the surety or letter of credit issuer shall be discharged from all liability.

Plaintiffs contend that, pursuant to the above statute, the conservator was required to give plaintiffs notice of any request for an order of discharge. However, I agree with defendant's analysis that ORS 33.520 relates to the discharge of a surety or a letter of credit issuer on application of the principal where the principal intends to file a new bond or irrevocable letter of credit. The statute on its face has no application to the termination of a conservatorship [11] which termination results from the conclusion of the conservatorship on its own terms. The conservatorship in the present case is for the protection of a minor and concluded when the protected person reached age of majority.

The specific bond terms and requirements for the bond of a conservator are provided for at ORS 126.243. There it specifically provides that the bond of a conservator will continue in effect until the final account is approved and an order of discharge is entered. ORS 126.243 additionally provides for the termination of the obligation of the surety "upon notice in writing to the conservator and the court specifying a date, not less than 30 days after the date of notice, on which the termination becomes effective."

In the present case, defendant Safeco did not seek to terminate its obligations, but rather its obligations were terminated by the natural operation, progression and conclusion of the conservatorship. In conformance with ORS 126.243, Safeco's bond had no further effect once the final account was approved and an order of discharged entered. ORS 33.520 does not supersede that specifically applicable provision and, in fact, has no application to the discharge of Safeco's obligations under the subject bond.

Plaintiffs knew or should have known when the conservatorship would be terminating, knew of their claims and should have presented their claims to the conservatorship and had them considered prior to the conservator's discharge, the conservatorship's termination and the bond's exoneration. Plaintiffs did not file a request for notice and, under the circumstances of this case, a conservator must only provide notice of a petition to terminate a conservatorship to a per-

**11.** Although the statute may apply to situations where a new bond is not required, it does not apply to situations where a conservatorship is terminated.

son who has filed a request for notice. *See* ORS 126.187.

*Sanctions Not Appropriate*

 Although plaintiffs have not prevailed, it cannot be said from the record that their claim is interposed for an improper purpose or is not well grounded in fact nor warranted by existing law or good faith argument for the extension, modification or reversal of existing law. As such, defendant's motion for sanctions under Fed.R.Civ.P. 11 is denied.

### CONCLUSION

Defendant's motion to dismiss (# 7) is allowed, defendant's motion for sanctions (also contained in # 7) is denied and this action is dismissed.