**LAKE MEAD AIR, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CV–S–96–0484–DWH(RLH).

United States District Court,
D. Nevada.

Dec. 18, 1997.

R. Glen Woods, Woods & Erickson, Henderson, NV, for plaintiff.

Kathryn E. Landreth, U.S. Atty., Las Vegas, NV, Brian J. Feldman, Trial Attorney, Tax Division, Dept. of Justice, Washington, DC, for Defendant.

### ORDER

HAGEN, District Judge.

This is a dispute regarding excise taxes assessed against plaintiff. Before the court are the Government's motion for summary judgment (# 11, opposition # 15, reply # 17), and plaintiff's motion for summary judgment (# 12, opposition # 17, reply # 18).

### FACTS

Plaintiff was assessed a penalty for failing to collect and pay over air transportation excise taxes under 26 U.S.C. §§ 4261, 4291 and 6672.[1]

During the tax periods at issue (ending September 30, 1990 through December 30, 1992), plaintiff Lake Mead Air, Inc. ("Lake Mead") operated a fleet of aircraft providing scenic tours around the Grand Canyon. Most of plaintiff's business resulted from tours provided by Gray Line Tours Company ("Gray Line"), with whom plaintiff had been conducting business since 1987. Gray Line advertised air tours and day long excursions including an air component around the Grand Canyon.

According to the Government, there was no written contract between Lake Mead and Gray Line, but Lake Mead was free to reject Gray Line's business. # 11 at 3. The Government points out that when Gray Line expressed interest in running tours to the south rim of the Grand Canyon, plaintiff refused to accommodate that request. It claims that despite not having a contract, there was a set procedure by which Gray Line would take tour reservations on a daily basis (some of which were booked months ahead) and then fax Lake Mead the number of passengers expected for the next day's morning and afternoon trips. On the next day, Gray Line would pick up passengers in the morning and confirm to Lake Mead the number of passengers coming. The passengers fell into three categories: those taking the morning air tour, the afternoon air tour, and the mixed land and air tour.

The air tour portion of the tour was always the same, taking passengers on a tour around the Grand Canyon lasting approximately one and one half hours. The tours originated and terminated at the same airport. Lake Mead would then bill Gray Line for the number of passengers actually flown. Lake Mead collected no excise tax from the passengers.

Plaintiff's description of its operation differs slightly. According to plaintiff, Lake Mead provides charter service to many charter customers in addition to Gray Line, and operates only at the request of its customer. Its charter customer always specifies the time of departure, the destination, route, passengers and details of the charter flights, and always has exclusive control over the charter aircraft, and that passengers from one charter customer would never share an aircraft with those of another charter. Opposition, # 15, at 2, citing Depo. of Art Gallenson.

The IRS determined Lake Mead was liable for a 100% penalty pursuant to I.R.C. § 6672 for failing to collect air transportation excise taxes on its flights and paying the taxes over the United States as required by sections 4261 and 4291. Plaintiff appealed, and the matter was assigned to Appeals Officer Gerry Andrews.

On March 17, 1994, Andrews sent a letter to plaintiff's C.P.A. proposing a settlement

---

1. § 4261 provides:

(a) There is hereby imposed upon the amount paid for taxable transportation (as defined in section 4262) of any person a tax equal to 10 percent of the amount so paid [the transportation provided qualifies under section 4262].

(d) Except as provided in section 4263(a), the taxes imposed by this section shall be paid by the person making the payment subject to the tax [section 4263(a) contemplates transportation paid for outside the United States and is thus inapplicable].

§ 4291 provides:
Except as otherwise provided in section 4263(a), every person receiving any payment for facilities or services on which a tax is imposed upon the payor thereof under this chapter shall collect the amount of the tax from the person making such payment [again, section 4263(a) is inapplicable].
§ 6672 provides a 100% penalty for anyone failing to collect and pay over the tax as required by section 4291.

requiring plaintiff to execute a Form 906 "Closing Agreement on Specific Matters," requiring plaintiff to agree to collect the air transportation tax on future flights. Thereafter, plaintiff and the IRS made a Request for Technical Advice from the IRS National Office resulting in a Technical Advice Memorandum being issued on March 2, 1995, interpreting section 4281 (an exception to section 4261)[2] and upholding the Government's position regarding the taxability of the air tour flights. Lake Mead contends the adverse request for technical advice is filled with factual errors. Thus, Andrews determined that the Form 906 closing agreement would not be necessary to assure compliance by plaintiff with respect to future tax periods.

On May 9, 1995, Appeals Officer Andrews sent plaintiff's counsel a letter enclosing a Form 2504 "Agreement to Assessment & Collection of Additional Tax and Acceptance of Overassessment." However, in order to achieve finality, Andrews now says he should have sent a Form 866 "Agreement as to Final Determination of Tax Liability." On June 27, 1995, plaintiff's counsel returned to Andrews the executed Form 2504, declaring by cover letter plaintiff consented to the reduced settlement amount but still intended to pay a divisible portion of the tax and file a claim for refund to challenge the section 6672 penalty.

By letter dated June 30, 1995, Andrews responded to plaintiff's counsel advising that an IRS Form 866 should have been sent along with the Form 2504 to assure that the liabilities for the periods at issue would be closed with finality. Andrews advised plaintiff's counsel that a settlement without finality would be rejected by Andrews' Associate Chief. Plaintiff's counsel did not execute the Form 866 accompanying Andrews' June 30, 1995 letter, so the proposed settlement of the section 6672 liability was never presented to the Associate Chief. By letter dated July 29, 1995, the IRS advised that to the extent the parties were unable to reach a satisfactory agreement, section 6672 liability would be assessed. The Government claims that at no

time during Andrews' involvement was he delegated final settlement approval to compromise on section 6672. Defendant's Motion, # 11, at 6–16.

On August 14, 1995, the IRS made a § 6672 assessment against plaintiff in the amount of $301,730.00. On or about December 6, 1995, the IRS sent plaintiff a Final Notice of Intention to Levy. On or about January 8, 1996, the IRS issued notice of levy (Form 688–A); however, on January 17, 1996, the levies were released by the IRS, and IRS transcripts indicate that no funds were collected as a result of the levies.

On or about April 9, 1996, plaintiff satisfied the prerequisites for filing a tax refund suit by, *inter alia*, paying under protest an assessment for one passenger per quarter and filing claims for refund with the IRS. Plaintiff's claims for refund address the merits of the assessment described above. There is no mention in the claims for refund of a settlement agreement at the IRS administrative level that was breached, nor is there any mention in the claims for refund of any improper levies on plaintiff's bank accounts.

On May 13, 1996, plaintiff's claims for refund were disallowed, and plaintiff commenced this action on June 4, 1996.

## STANDARD

Summary judgment is appropriate if the evidence, read in the light most favorable to the nonmoving party, demonstrates there is no genuine issue as to any material fact, and the moving part is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir.1989). "There is no genuine issue of material fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at vial.'" *Taylor*, 880 F.2d at 1045 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Nor is there a genuine

---

**2.** § 4281 provides, in pertinent part:

The taxes imposed by section 4261 and 4271 shall not apply to transportation by an aircraft having a maximum certificated takeoff weight

of 6,000 pounds or less, except when such aircraft is operated on an established line.... Both parties agree plaintiff's planes meet the first requirement, so the dispute centers on whether plaintiff operates on an established line.

issue of fact if a rational trier of fact could not find in favor of the party opposing the motion for summary judgment. *Taylor,* 880 F.2d at 1045 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Finally, conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor,* 880 F.2d at 1045.

## ANALYSIS

### I. "Operated on an Established Line"

The main thrust of this case so far has been whether the transportation provided by plaintiff is excepted under section 4281 because it is not "operated on established line."

26 C.F.R. § 49.4263-5(c) provides:

The term "operated on an established line" means operated with some degree of regularity between definite points. It does not necessarily mean that strict regularity of schedule is maintained; that the full run is always made; that a particular route is followed; or that intermediate stops are restricted. The term implies that the person rendering the service maintains and exercises control over the direction, route, time, number or passengers carried, etc.

Thus, the two main components of "operated on established line" are "some degree of regularity" and "between definite points." Regarding the "some degree of regularity" requirement, the regulations focus on both the frequency of travel over a certain area and the control exercised by the person rendering the service. For instance, 26 C.F.R. § 49-4263-5(a) exempts from tax "amounts paid for the transportation of person on a small aircraft of the type sometimes referred to as 'air taxis.' " The analogy to "air taxis" suggests an airplane for hire, subject to the whims of a particular customer. Except to the hiring customer, its route is wholly unpredictable and unreliable. However, the crux of the phrase "on an established line" seems to be that the public can rely on the transportation because of a regularity determined by the provider, not the customer, i.e., the whims of customers do not dictate a particular route.

This general principle is supported by analysis of the Revenue Rulings. Rev.Rul. 66-301 considered helicopter rides offered by a private contractor on an unscheduled basis at a community fair lasting 10 days per year. There were no scheduled or fixed times, and no advance booking was available. The Service found this was not operation on an established line because:

A schedule other than customer demands is necessary if the operation is to be conducted with 'some degree of regularity.' Also, a sporadic operation, the existence of which is contingent upon the fair and the renewal of which is uncertain, lasting only a few days a year, as in the instant case, cannot be characterized as being 'operated on an established line.'

But for the fair and any customers it happened to produce, the operator would not have flown that route.

Similarly, in Rev.Rul. 72-617, the IRS held that a company with a contract to deliver mail overnight did not operate on established line. The contract provided for six regularly scheduled round trips weekly, gave the postal service control over the schedule and gave it exclusive use of the aircraft with respect to the six round trips. The Service held the trips were not on an established line because the carrier had no control over the direction, route, time or cargo carried. The Service stated the arrangement is "a charter of the aircraft, a so-called 'wet lease.' " The Service noted that where the aircraft are operated on a charter basis between two points served by the carrier on a regularly scheduled basis, both the charter and scheduled flights are operated on an established line, but, in the Postal Service case, since the carrier otherwise did not serve the two cities on a regularly scheduled basis, the mail service was not operated on an established line.

### A. "Some Degree of Regularity"

■ The foregoing analysis suggests that the "some degree of regularity" test requires a "but for" analysis of control and frequency of flight over a route. Regarding control, there is an apparent factual dispute in the present case because plaintiff contends it operates only at the request of its customers, who always supply the passengers and specify the time of departure, destination, route

and other details of the charter flights. The Government, however, claims Lake Mead had the power to refuse to fly to any particular location, and cites deposition testimony of from Gray Line's president, Barry Perea, recounting Lake Mead's refusal to fly to the Grand Canyon's south rim. Motion for Summary Judgment, Exh. M at 23. Plaintiff counters with a different citation to Perea's deposition stating that once the plane is in flight, the pilot has the power to deviate from the route only "for safety reasons or for—I don't know what another valid reason would be-sure, he'd better do that ... [b]ut the pilot doesn't have the ability to fly people down the Colorado River instead of over the Grand Canyon because that's not what we sold." Plaintiff's Opposition, # 15, Exh. 2 at 20.

Perea's deposition does not overcome defendant's showing. Clearly, in any situation, an aircraft hired to fly a specific route will generally be expected to complete that route. However, this expectation does not mean the owner of the aircraft has no control over its route. The issue is whether there was a restriction on Lake Mead's ability to exercise control over the direction, route, time or number of passengers carried. In Rev.Rul. 72–617, the overnight mail carrier chartered the aircraft to the Postal Service, which had absolute control over the plane's route and times for departure. In the present case, absolute control was not ceded, as plaintiff demonstrated in declining to fly over the south rim of the Grand Canyon. Unlike the helicopter rides in Rev.Rul. 66–301, Lake Mead's flights were not completely contingent upon customer demand.

Regarding the frequency element of "some degree of regularity," the mail carrier in Rev.Rul. 72–617 did not normally serve those two cities, so that but for the Postal Service contract it would not have flown that route. In the present case, Lake Mead regularly flew over the Grand Canyon such that it would have made the flights without Gray Line's business. As Lake Mead points out in its opposition, Gray Line was not the only customer it served. Plaintiff's Opposition, # 15, Exh. 1.

Therefore, because Lake Mead exhibited both the requisite control and frequency of flights, it meets the "some degree of regular-ity" requirement of "operated on an established line."

B. "Between Definite Points"

Lake Mead also meets the "between definite points" requirement of "operated on an established line." 26 C.F.R. § 49.4261–1(b) provides that transportation need not be between *two* definite points to be taxable, and that unless otherwise exempt, a payment for continuous transportation beginning and ending at the same point is taxable. Returning to the analogy of the taxi clarifies this finding. Most taxis do not even have a point of origin; they just travel the streets searching for fares. Conceivably, an air taxi would start at a specific landing field and land where the customer directed; thus, it would have, at most, one definite point. On the other hand, Lake Mead's tours started and ended at the same point without fail, so its flights were between definite points.

Because the court finds that Lake Mead is not subject to the exception of section 4281, the transportation it renders is taxable under section 4261.

II. Is Plaintiff Responsible for Collecting the Taxes?

Plaintiff claims that even if it does not fall under the exemption of section 4281, it is not required to collect the tax because section 4261 requires that the tax is to be paid by "the person making the payment subject to the tax." Section 4291 then imposes a duty to collect the tax upon "every person receiving any payment for facilities or services on which a tax is imposed upon the payor thereof." Plaintiff argues it had no duty under section 4291 to pay over the taxes. # 12 at 7.

Section 4261 essentially creates an intermediary tax collector; it is of the genus "collected excise taxes." "Collected excise taxes are those which are imposed on persons other than the person who is required by law to collect the tax and pay it over to the Government." Internal Revenue Manual 563(17).1. Thus, the passenger is liable for the tax (section 4261), but section 4291 requires the entity receiving payment from the passenger to collect the tax and pay it over

to the Government. Section 6672 provides a remedy against those who fail to collect the excise tax. "As such, the 100–percent penalty is not a penalty in the usual sense, but is a method of collecting taxes that otherwise would be uncollectible." Internal Revenue Manual 6810 HB (14)5(10).

### A. Was the Government on notice of the § 4291 argument?

▉ As an initial matter, the Government argues this court has no jurisdiction to consider the § 4291 question because plaintiff can only raise in a tax refund suit those matters set forth in its claim for refund, as required by 26 U.S.C. § 7422(a).[3] "The claim must set forth in detail each ground upon which a credit or refund in claimed and facts sufficient to apprise the commissioner of the exact basis thereof." 26 C.F.R. § 301.6402–2(b). Compliance with the requirements of section 7422 and 26 C.F.R. § 301.6402–2(b) is a jurisdictional prerequisite to a suit for refund of taxes. *Martinez v. United States*, 595 F.2d 1147, 1148 (9th Cir.1979).

▉ In *Boyd v. United States*, 762 F.2d 1369, 1371–72 (9th Cir.1985), the Ninth Circuit addressed adequacy of notice to the IRS in a tax refund claim. The taxpayer in *Boyd* was a renowned poker player who also managed a cardroom. Using his own money, he played in games to stimulate business in the cardroom. Thus, he claimed deductions for gaming losses as a business expense, or, alternatively, as gaming losses per se up the amount of winnings. *Id.* at 1371. At trial, in addition to his personal losses, plaintiff tried deduct the expense incurred in tipping other employees and in contributing to the house take-off. *Id.* The Ninth Circuit did not allow these deductions because plaintiff's refund claim stated only that he "incurred losses from participating in the [casino] poker games" and that "[this] expense" was deductible under section 162(a). The court found that taken at its face, "this expense" referred only to losses incurred betting on poker hands and nothing else, so that there was insufficient notice given to conduct an admin-

istrative investigation of the tips and take-off claims. *Id.* at 1372. The court noted the policies behind section 7422(a) are twofold: to prevent surprise and to give the IRS adequate notice of the claim and its underlying facts so it can make an administrative determination. *Id., citing Burlington Northern Inc. v. United States*, 231 Ct.Cl. 222, 684 F.2d 866, 868 (1982). The rule of *Boyd* is that the IRS is entitled to take the refund claim at face value and examine only the points to which it directs attention. *Id.* at 1372, *citing United States v. Garbutt Oil Co.*, 302 U.S. 528, 531–33, 58 S.Ct. 320, 82 L.Ed. 405 (1938).

▉ In light of *Boyd*, the question in the present case is whether the refund claim read "at face value" directed the IRS's attention to the issue of if plaintiff was the entity required to collect and pay over the tax. 762 F.2d at 1372. This is a question of whether the IRS had notice that plaintiff was bringing a claim for refund under section 4291 or section 4261. The situation in *Boyd* was clearer because both sides agreed the claimant had two theories—business losses and gambling losses—but at trial plaintiff tried to introduce new *facts*—tips and the house take-off. The claimant's use of "this expense" clearly indicated his original intent to recover on only one factual ground. In the current case, however, the claimant is proposing an alternative *theory*, i.e., that it had no duty to collect and pay over the tax because it was the wrong party to do so.

At the hearing the court expressed its interest in this matter, and each side provided argument. The government has also submitted a supplemental brief which plaintiff has moved to strike, or, alternatively, moved the court to consider its opposition. The court denies plaintiff's motion to strike and grants its motion to file a supplemental opposition. While the court notes the Government's technical failure to move for leave to file a supplemental pleading, it will consider the pleading because such pleadings allow the court to award complete relief in the

---

**3.** Section 7422(a) provides:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or

illegally assessed or collected ... until a claim for refund or credit has been duly filed with the secretary....

same action, avoiding the costs and delays of separate suits. *See Keith v. Volpe,* 858 F.2d 467, 473 (9th Cir.1988).

Plaintiff argues paragraphs 1 and 3 of its claim for refund can be read to give notice of a section 4291 issue. Paragraph 1 states:

1. The air transportation excise tax has been erroneously assessed against the Claimant. The Internal Revenue Code (Section 4261(d)) imposes the tax on the person making the payment subject to the tax. The Claimant has not at any time made any payments subject to the air transportation excise tax.....

Regarding this language, the Government argues:

... the assessment at issue is not an assessment made against the plaintiff for air transportation excise taxes under Section 4261(d) but rather is a penalty assessment made against the plaintiff pursuant to 26 U.S.C. § 6672.... In turn, the "alternative theory" put forth by the plaintiff in this action is directed at whether the plaintiff was responsible during the periods at issue for collecting and paying over air transportation excise taxes to the Government for purposes of the Section 6672 penalty assessment asserted against it and has nothing to do with any assessment made against the plaintiff for air transportation excise taxes under Section 4261(d) as a result of any payments that the plaintiff made with respect to taxable transportation.

This argument is difficult to unravel, but it appears the Government asserts that because plaintiff's "alternative theory" is a section 4291 issue, the first paragraph of the refund claim does not put the IRS on notice because plaintiff argues section 4261. This is correct, and the court finds nothing in paragraph 1 would put the IRS on notice of plaintiff's claims under section 4291.

However, the Government's insistence that this case revolves around section 6672 begs the question as to the basis for its assessment because that section does not stand alone. Section 6672 provides a penalty for willful failure to "... collect, truthfully account for, and pay over any tax imposed by this title...." It cannot impose liability without some underlying failure to abide by another section of Title 26. *See Silberberg v. United States,* 355 F.Supp. 1163 (S.D.N.Y. 1973) (26 U.S.C. § 6672 contemplates two distinct findings: (1) a person required to collect, account for or pay over any tax, and (2) willful attempt to evade or defeat the tax.). For the air transportation excise tax, section 6672 operates in conjunction with section 4291. The court has been unable to locate any cases imposing a section 6672 penalty because of a violation of section 4261. Since section 4261 usually imposes the tax on the passengers, such a penalty is difficult to imagine and would be more difficult to assess. Quite simply, the court finds, in the air transportation excise tax context, that a reference to a section 6672 penalty necessarily implies section 4291 as its basis.[4]

Given that section 6672 necessarily implies section 4291, the court finds the third paragraph of the refund claim sufficient to give notice of a section 4291 disputer. It reads:

3. The only assessment that has been made against the Claimant is of air transportation excise taxes. Neither the responsible person penalty (I.R.C. § 6672) nor any other penalty has been assessed against the Claimant. Nevertheless, if such a penalty had been assessed against Lake Mead Air, Inc., such assessment

---

4. The Government's assessments serve to confuse this issue. The Government has alternatively referred to the assessment as coming under sections 4261 and 6672. Appeals Officer Andrews' letter of July 28, 1995 states "... we will assess the excise taxes as determined by the District Director." # 12 Exh. 1. His letter of May 9, 1995 states "Lake Mead Air ... is subject to the excise tax imposed by I.R.C. § 4261.... [T]he only issue remaining is whether the 100% penalty provisions of I.R.C. § 6672 may be applied to collect the excise taxes." *Id.* Exh. 4. The Agreement to Assessment (Form 2504) states for each quarter

liability premised upon "Excise Tax— § 4261." # 11 Exh. C. The header in the IRS's response to the claim for refund's states "In Re: Civil Penalty—I.R.C. § 6672" and in the text mentions "an adjustment to your assessed civil penalties...." # 11 Exh. L. The language of section 4261 clearly places the burden of the tax on the passenger. *United States v. Washington Toll Bridge Authority,* 307 F.2d 330 (9th Cir.1962). Plaintiff is not "subject" to section 4261; the exemption issue under section 4281 was whether the *transportation* provided by plaintiff would exempt passengers.

would be improper, and should be abated, for the following reasons:

> (A) Lake Mead Air, Inc. had no duty to collect and pay over the tax. Nor did Lake Mead Air, Inc. collect or receive any air transportation excise taxes. As set forth above, the transportation provided by Lake Mead Air, Inc. is exempt from the air transportation excise tax.

Despite subparagraph A's mention of "no duty to collect and pay over the tax . . .",the Government argues insufficient notice because the next sentence refers to the section 4281 exemption rather than section 4291. The reference to the exemption is understandable, however, if plaintiff believed it was only being assessed under section 4261, as the Government's letters lead plaintiff to believe. *See* note 4, *supra*. Further, because sections 6672 and 4291 operate hand in hand, plaintiff's reiteration in paragraph 3 that it was not being assessed under section 6672 should have given notice to the government that plaintiff disputed liability under section 4291. Also, section 4291 imposes liability for both failing to collect and failing to pay over collected taxes. The first sentence of subparagraph A tracks this language exactly. This, when combined with plaintiff's disclaiming of any liability under section 6672, is enough to give the Government notice that plaintiff was claiming it had no duty to collect and pay over the taxes. *See also Air Tour Acquisition Corp. v. United States,* 781 F.Supp. 669, 672 (D.Hawai'i 1991) (finding that an air tour company had no liability to pay the section 4261 tax and no direct liability under section 4291 absent some other provision such as section 6672). To be sure, as shown by the request for technical advice, the bulk of this case has focused on the section 4281 exemption issue, but, for the reasons stated above, the court finds the IRS had notice of plaintiff's disclaimer of liability under section 4291.[5]

> B. Is plaintiff responsible for collecting the tax?

Having determined the Government had notice of a section 4291 argument, the question becomes whether plaintiff was the party responsible for collecting the excise tax.

Rev.Rul. 75–296 supports the conclusion plaintiff was not so responsible. In that ruling, advice was requested as to whether two fundamentally different travel agencies were responsible for collecting the excise tax. The first agency was an independent broker selling tours to individuals and groups, and then chartered the aircraft from any airline having the required franchise rights. It was not under the supervision or control of any airline, and it prescribed the time of departure and origin and destination of flights. The second travel agency was not licensed as a broker but represented the airline and was under the airline's control and supervision, selling tours and remitting all money to the airline after retaining a commission. The Service held that where independent agencies sell tours to be taken on aircraft chartered from a carrier, the agencies were acting as principals and were required to collect the tax and pay it over to the government. However, the second agency was not required to collect the tax because where agencies sell taxable tours as representatives of the airlines, they are acting as agents of the airlines who are required to collect the transportation tax and remit it to the airlines who must pay the Government.

Plaintiff is more like the airline in the first scenario. Gray Line is independent and received payment from the passengers. The Government tries to distinguish the revenue ruling by pointing out that the first travel agency therein chartered the aircraft, stepping into the shoes of the air carrier as a principal who received payment. However, the key consideration in Rev.Rul. 75–296 is the autonomy of the agency receiving payment from the passenger, not the autonomy of the aircraft owner. The first agency received payment from the passengers and was required to pay the tax because it used that payment according to its own wishes, much like Gray Line did in the present case. Gray Line could have done business with any air

---

5. Indeed, it appears the IRS may have misread plaintiff's claim for refund. In its letter denying the claim, the header states "In Re: Civil Penalty—I.R.C. § 6672" and the text mentions "an adjustment to your assessed civil penalties." # 11 Exh. L. Had it read the refund claim carefully, the IRS would have noticed plaintiff's disclaimer of section 6672 liability.

carrier. Unlike the second agency, Gray Line was not an agent of plaintiff and was not required to give over a certain amount of the passenger's money to plaintiff; it could bargain for the best rates and select the best carrier.

The Code of Federal Regulations and recent statutory enactments also show plaintiff was not obligated to collect and pay over the tax. 26 C.F.R. § 49.4261–10 states:

> The tax imposed by section 4261 is payable by the person making the taxable payment for transportation or for seats, berths, etc., and is collectable by the person receiving such payments.

Plaintiff was not responsible for collecting the tax because plaintiff did not receive the taxable payment for transportation. The Government argues that because the transportation was paid for by Gray Line on a per capita basis, Gray Line was the person "making the taxable payment for transportation." Opposition, # 17, at 15. This interpretation is unsupported elsewhere in the Code of Federal Regulations. For instance, 26 C.F.R. § 49.4261–7(h)(2) provides:

> The charterer of a conveyance who sells transportation to other persons must collect and account for the tax with respect to all amounts paid to him for transportation which are in excess of 60 cents. In such case, no tax will be due on the amount paid for the charter of the conveyance but it shall be the duty of the owner of the conveyance to advise the charterer of his liability for collecting and accounting for the tax.

This regulation dispells the Government's contention that one who sells transportation to others is not the party liable for the tax. The distinction between a charterer and a company such as Gray Line which receives payment from passengers and later pays the air carrier on a per capita basis does not put Gray Line in a separate category. Chartering the entire aircraft is not the key issue; the character of the organization receiving payment from the passenger is. If "Gray Line" were substituted in for "charterer" throughout Regulation 49.4261–7(h)(2), the end would be the same. Only if Gray Line were operating as an agent for Lake Mead would the result differ. For purposes of this Regulation, Gray Line is a charterer, except

that it does not necessarily fill the whole air craft.

Recent changes to section 4263 support this interpretation. Section 4263(c) provides:

> Where any tax imposed by section 4261 is not paid at the time payment for transportation is made, then, under regulations prescribed by the Secretary, to the extent that such tax is not collected under any other provision of this subchapter—
>
> (1) such tax shall be paid by the person paying for the transportation or by the person using the transportation; . . .
>
> (3) payment of such tax shall be made to the Secretary, to the person to whom the payment for transportation was made, or, in the case of transportation other than transportation described in section 5262(a)(1), to any person furnishing any portion of such transportation.

26 U.S.C.A. § 4263(c) (1996).

The Taxpayer Relief Act of 1997, P.L. 105–34, Sec. 1031, codifies changes to the first sentence of section 4263(c), stating:

> SECONDARY LIABILITY OF CARRIER FOR UNPAID TAX.—
>
> Subsection (c) of section 4263 is amended by striking 'subchapter—' and all that follows and inserting 'subchapter, such that tax shall be paid by the carrier providing the initial segment of such transportation which begins or ends in the United States.'

This is a modification—not a clarification—of existing law. The Senate Report issued notes, "The present-law provision imposing liability for the tax on passengers (with transportation providers being liable for collecting and remitting revenues to the Federal Government) are modified to impose secondary liability on air carriers." Senate Report 105–33, 105th Cong., 1st Sess.1997, 1997 WL 353020 (Leg.Hist.). Two facts about this sentence stand out: first, the parenthetical reference to "transportation providers" being presently responsible for collecting the tax, and, second the assertion that imposing liability on air carriers is a "modification" of current law. This implies that "transportation providers" "air carriers" are capable of being two different entities, as was the situation in Rev.Rul. 75–296, and as is the case

here. The conference report supports this conclusion. H.R.Conf.Rep. 105–220 ("The conference agreement follows the House bill and Senate amendment provisions extending secondary liability for the passenger taxes to air carriers.").

Thus, because of Rev.Rul. 75–296, 26 C.F.R. § 49.4261–10, and the recent changes to section 4263, the court finds as a matter of law that plaintiff was not required to collect and pay over the excise tax.

Summary judgment is therefore appropriate for plaintiff on the issue of section 6672 penalty liability for failure to collect and pay taxes under section 4291. The amount paid under protest shall be refunded to plaintiff, and, if the parties cannot reach an agreement on the actual amount, the court will accept briefing on the issue.

III. Plaintiff's Claims Regarding the Agreement of Compromise

Lastly, the court notes that plaintiff's seventh and eighth counts claim damages predicated on the IRS's failure to abide by its alleged agreement of compromise. The Government has made a well-supported argument that this court has no jurisdiction to consider this claim because it is a contract claim against the United States and must be brought in the United States Claims Court. Plaintiff ignores this argument in its opposition to the Government's motion for summary judgment. However, in light of the finding that plaintiff had no duty to collect and pay over the taxes, the court finds any claims regarding the offer to compromise are moot.

Accordingly, **IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment (# 12) on the issue of tax liability is GRANTED; plaintiff's motion for summary on issues concerning the offer of compromise is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (# 11) is DENIED.