Jeffrey SMITH, Plaintiff—Appellee,

v.

NORTH LAS VEGAS POLICE DE-
PARTMENT; et al., Defen-
dants—Appellants.

No. 03–16703.

D.C. No. CV–99–01492–LDG.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 2004.

Decided Feb. 9, 2005.

of this circuit except as provided by Ninth Circuit Rule 36–3.

Cal J. Potter, III, Potter Law Offices, Las Vegas, NV, for Plaintiff–Appellee.

John W. Johanson, Robert W. Freeman, Jr., Esq., Henderson, NV, for Defendants–Appellants.

Before OAKES,* KLEINFELD, and CALLAHAN, Circuit Judges.

* The Honorable James L. Oakes, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

MEMORANDUM**

The appellants appeal the denial of their motions for summary judgment on grounds of qualified immunity in an action alleging claims under 42 U.S.C. § 1983. Jeffrey Smith ("Smith"), a former detainee at the North Las Vegas Detention Center, sued various police officers, officials at the detention center, and the city of North Las Vegas, on grounds of unlawful arrest, excessive force, and deliberate indifference to his medical needs. We have jurisdiction under 28 U.S.C. § 1291, and we affirm, in part, and reverse, in part.

We review the district court's decision to grant summary judgment on grounds of qualified immunity de novo. *Hell's Angels Motorcycle Corp. v. McKinley*, 360 F.3d 930, 933 (9th Cir.2004). In ruling on qualified immunity, we must consider whether, "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right" that is clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Smith alleges that on January 27, 1998, he was arrested without probable cause by Officer Cardinale of the North Las Vegas Metropolitan Police Department because he failed to identify himself when he was stopped. He contends that he was then transported to the North Las Vegas Detention Center, where he was allegedly beaten while in custody, confined to a cell, and not given proper medical treatment or properly monitored for almost 36 hours in spite of having suffered severe closed head injuries.

■ The first issue is whether Officer Cardinale was entitled to summary judgment. Cardinale arrested Smith pursuant to Nevada Revised Statutes §§ 171.123 and 197.190 for failing to identify himself.[1] The district court held that Smith was wrongfully arrested because these statutes had been declared unconstitutional by this court, and no reasonable officer could have believed such an arrest was valid. *See Martinelli v. City of Beaumont*, 820 F.2d 1491 (9th Cir.1987). However, in *Hiibel v. Sixth Judicial District Court of Nevada*, 542 U.S. 177, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004), the Supreme Court reversed the Ninth Circuit, and held that § 171.123 is constitutional. Accordingly, Cardinale's arrest of Smith under these statutes was reasonable under the Fourth Amendment, and Cardinale is entitled to summary judgment on this claim.

■ The second issue is whether Officers Liani and Bender were entitled to summary judgment on Smith's claims of excessive force. According to the appellants, Smith arrived at the detention center intoxicated, and had urinated and defecated on himself. The appellants contend that Liani and Bender took Smith to the shower room to clean him up, and that when Smith tried to rush past them, he shoved Liani in the mid-section. Liani then shoved back at Smith, who slipped and fell. Smith, however, contends that the officers beat him so severely that they caused his closed head injuries. The medi-

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. N.R.S. § 171.123(1) authorizes "[a]ny peace officer [to] detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime." N.R.S. § 197.190 makes it a misdemeanor for a person "after due notice [to] refuse or neglect to make or furnish any statement, report or information lawfully required of him by any public officer ... or [to] willfully hinder, delay or obstruct any public officer in the discharge of his official powers or duties."

cal testimony concerning Smith's injuries is inconclusive as to the source of his injuries.

Although Smith has amnesia and cannot testify as to anything that took place while he was in police custody, he offers other evidence in support of his allegations. *See Santos v. Gates*, 287 F.3d 846, 852 (9th Cir.2002); *see also Ting v. United States*, 927 F.2d 1504 (9th Cir.1991). He points to declarations by Cardinale about a conversation he had with Officer Czack, a fellow officer, after the incident. According to Cardinale, Czack told him that she had heard that "[Smith] shit himself over at the jail and flung shit [at the officers] and so they thumped him." Although the district court noted that Czack denied making this statement, it found that her disavowal of this statement created a credibility issue for the jury to determine.[2] We agree, and affirm the district court's denial of summary judgment on this issue. *See Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir.1989).

■ The third issue is whether the district court erred in denying the motion for summary judgment by Ellingson, the director of the North Las Vegas Detention Center. A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir.2001). We affirm the district court's denial of summary judgment because there are factual issues as to whether individuals at the detention center were deliberately indifferent to Smith's medical needs, and whether supervisors,

such as Ellingson, contributed to this state of affairs.

Smith contends that although he sustained a head injury while in the shower, he was left, largely unmonitored and naked in a jail cell, for almost 36 hours. The appellants, however, assert that rather than ignore Smith's condition, the staff ensured that Smith received several medical examinations while in custody. They claim that Cardinale took Smith to a hospital for a pre-booking medical examination, and that Smith was again examined upon arrival at the detention center and after the shower incident.

Smith, however, points to testimony from Nurse Chesler that these examinations were cursory, and that officials in charge of the detention center knew the center was short-staffed and ignored his condition. Officer Hartshorn, another correctional officer, asserted in a declaration that she grew concerned about Smith's well-being and informed her supervisor. She also stated that she told Nurse Chesler and Dr. Arguello, the medical director, about her concerns and that Arguello told her that he would have to come back at another time and look at Smith.

It is undisputed that although Arguello typically commenced his shift early in the morning, he did not examine Smith until 4:30 p.m. on January 28, the day after Smith's arrest. There is also evidence in the record that another detainee at the facility previously died from closed head injuries and that thereafter, a training program on detecting such injuries was developed, and although presented to supervi-

---

2. We do not find the appellants' contention that Czack's statements are inadmissible hearsay to be persuasive on this appeal from the denial of qualified immunity. *See* Fed.R.Evid. 613; Fed.R.Evid. 804(b)(1). We note that

there is no indication that the appellants made any motion to strike these statements from the deposition, and they have likely waived an objection. *See Allen v. Scribner*, 812 F.2d 426, 435 n. 18 (9th Cir.1987).

sors, was not implemented at the facility.[3]

Taking the evidence in the light most favorable to Smith, there are at least some issues of fact concerning his allegations that staff at the detention facility were deliberately indifferent to his medical needs and that omissions by supervisors, such as Ellingson, contributed to this state of affairs. Accordingly, the district court did not err in denying summary judgment on this issue.

■ The fourth issue is whether the district court erred in denying the motions for summary judgment by the City of North Las Vegas, and the Las Vegas Detention Center. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (stating that an inadequate training policy can give rise to municipal liability).

Smith contends that "the City of North Las Vegas, the North Las Vegas Police Department, and the North Las Vegas Detention Center acted with deliberate indifference by failing to adequately train, hire, and supervise their officers to ensure that the Constitutional rights of its citizens were not being trampled." Smith also alleged that the appellants were on notice of the need for reforms at the facility.

Based on the total evidence in the record, and viewing the evidence in the light most favorable to Smith, we cannot say that there are not material factual issues concerning the adequacy of training, hiring, and supervisory measures at the facility. Accordingly, the district court's denial of summary judgment to these entities is affirmed.

Thus, the district court's denial of summary judgment is REVERSED, as to Officer Cardinale, and AFFIRMED on all other claims. Each party shall bear its own costs on appeal.

AFFIRMED in part and REVERSED in part.

---

3. There is some issue as to whether a training program would have made any difference. Dr. MacDonald, a medical expert, testified that the detection of head injuries is difficult and that even trained medical personnel may fail to diagnose head injuries. Moreover, Smith's intoxication at the time of his arrival at the detention center certainly complicated the detection of his head injuries.

